# GABRIEL SEYMOUR ET AL. *v.* REGION ONE BOARD OF EDUCATION ET AL.
## (SC 16650)

Borden, Norcott, Palmer, Vertefeuille and Zarella, Js.

Argued May 20—officially released August 20, 2002

*Gabriel Seymour*, certified legal intern, with whom was *Eugene P. Falco*, for the appellants (plaintiffs).

*Ralph E. Urban*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Bernard F. McGovern, Jr.*, assistant attorney general, for the appellee (defendant Richard Blumenthal).

*Opinion*

BORDEN, J. The principal issue in this appeal[1] is whether the plaintiffs' challenge to the constitutionality of the financing system for regional school districts

---

[1] The plaintiffs appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c).

pursuant to General Statutes § 10-51 (b),[2] presents a nonjusticiable political question. The plaintiffs, Gabriel Seymour, Thomas R. Coolidge, Susan Dempsey, Stephen W. Jenks and Joyce Schurk, claim that the trial court improperly dismissed their complaint on the grounds of nonjusticiability. We conclude that the plaintiffs' claim is justiciable and, accordingly, we reverse the judgment of the trial court to the contrary.

The plaintiffs, who are taxpayers in the town of Canaan, brought this declaratory judgment action[3] against the defendants, Region One board of education (board) and Richard Blumenthal, the attorney general,[4]

---

[2] General Statutes § 10-51 (b) provides: "For the purposes of this section, 'net expenses' means estimated expenditures less estimated receipts as presented in a regional school district budget. On the date or dates fixed by the board, each town in the district shall pay a share of the cost of capital outlay and current expenditures necessary for the operation of the district. The board shall determine the amount to be paid by each member town. Such amount shall bear the same ratio to the net expenses of the district as the number of pupils resident in such town in average daily membership in the regional school district during the preceding school year bears to the total number of such pupils in all the member towns, provided that the board may recalculate such amount based on the number of pupils in average daily membership in the regional school district for the current school year and may adjust each member town's payment to the regional school district for the following fiscal year by the difference between the last such payment and the recalculated amount. Until the regional school district has been in operation for one year, such amounts shall be based on the average daily membership of pupils in like grades from each of such towns at any school at which children were in attendance at the expense of such towns during the preceding school year."

[3] The plaintiffs asserted in their complaint that all parties who have an interest in its subject matter were given reasonable notice pursuant to Practice Book § 17-56 (b). These parties, whom the plaintiffs identified by a certificate appended to the complaint, were: each individual member of the named defendant, Region One board of education, who are elected from each of the six member towns of the regional school district; the first selectmen of each of those towns; the state commissioner of education; and each of the other regional boards of education in the state. No question has been raised regarding the sufficiency of these notices.

[4] In addition, the town of Salisbury intervened as a defendant, and relies on the brief of the attorney general in this court. The board takes no position regarding the validity of the plaintiffs' complaint. Furthermore, only the

seeking a judgment: (1) declaring § 10-51 (b) unconstitutional on its face and as applied; and (2) directing the board to change its system of cost allocation among its member towns so that the tax burden falls equally on all taxpayers in the regional school district served by the board. The defendant moved to dismiss the complaint on the grounds that: (1) the plaintiffs lack standing; and (2) the plaintiffs' claims are nonjusticiable because they present a political question. The trial court dismissed the complaint on the ground of nonjusticiability.[5] This appeal followed.

In their complaint, the plaintiffs made the following allegations. They are taxpayers in Canaan, which is one of the six member towns of Regional School District Number One (district), the other towns being Cornwall, Kent, North Canaan, Salisbury and Sharon. The costs of education for high school students and for certain kindergarten through eighth grade students are assessed on the towns by the board according to the formula set forth by § 10-51 (b). That formula assesses each member town an amount that "bear[s] the same ratio to the net expenses of the district as the number of pupils resident in such town in average daily membership in the . . . district during the preceding school year bears to the total number of pupils in all the member towns . . . ."[6] General Statutes § 10-51 (b). Because "[l]ocal property taxes are the principal source of revenue for public schools," because the statutory formula "disregards variations in the total taxable prop-

---

attorney general moved to dismiss the case in the trial court. Therefore, for purposes of this appeal, we refer to the attorney general as the defendant.

[5] Because the trial court determined that the claim was nonjusticiable, it did not address the question of the plaintiffs' standing. We consider that question in part II of this opinion.

[6] In other words, and in general terms, each town pays that percentage of the district's expenses equivalent to the percentage of the total number of students served by the district that reside in that town. In effect, costs are assessed on a per resident student basis.

erty in each town," and because Canaan has substantially less valuable taxable property than every other town in the district, except for North Canaan, "the tax burden on [the] plaintiffs and other taxpayers" in Canaan for educating their students "is substantially greater than the equivalent cost to taxpayers in every other member town . . . except for North Canaan."

The plaintiffs further alleged that "education costs constitute the single largest expense in most town budgets," and that "the unequal burdens of the present regional cost allocation formula sharply impact the total tax burden on small town taxpayers," such as the plaintiffs. "As a result, § 10-51 (b) unfairly discriminates against small Connecticut towns by forcing them to pay an unequal share of the expenses of educating students [as compared to] their bigger and wealthier neighbors."

In addition, the plaintiffs further alleged that "[t]he incidents of taxation should fall, as far as possible, equally on all similarly situated. Such equal taxation is mandated by the due process and equal protection provisions of both the United States and Connecticut Constitutions. All persons similarly circumstanced should be treated alike. . . . The Region One cost assessment formula based simply on student ratios violates this constitutional principle because the tax burden per student falls much more heavily upon the taxpayers of Canaan (and North Canaan) than on similarly situated taxpayers of surrounding municipalities. This fundamental inequality of taxation can only be corrected by directing the establishment of a uniform tax rate applicable to all taxpayers throughout the Region." The plaintiffs offered, by way of further allegation, a "constitutional . . . method for determining regional cost allocations . . . by dividing the projected total net education expenses for the region by the total equalized Grand List of taxable property for all member towns combined, thereby establishing a single regional

[mill] rate to be assessed equally against all property in all member towns."[7]

Finally, the plaintiffs alleged that they had sought to remedy the unconstitutionality of which they complain through both the board and the Canaan board of selectmen. They alleged that these efforts were unsuccessful, that "the logical alternative forums have been exhausted and [that the] plaintiffs have no alternative but to turn to the courts to resolve the question."

The core of the plaintiffs' complaint, therefore, is as follows. First, the statutory formula set by § 10-51 (b), which requires each town to contribute to the district's educational expenses based on the per pupil cost of education—i.e., the total educational expenses of the district divided by the number of the town's resident students served thereby—deprives the plaintiffs, who are taxpayers of a relatively property tax poor town, of their state and federal constitutional rights to due process of law and equal protection of the laws. Second, the only way in which this unconstitutionality may be remedied is by making the district into a single taxing district for the purposes of education, with a uniform mill rate. The district would then assess each town an amount based, not on the per pupil cost of education, but on the value of the real property in that town— i.e., by multiplying the uniform mill rate by the total assessed value of the town's real property.

---

[7] In other words, and in general terms, the plaintiffs alleged that the unconstitutionality of which they complain may be remedied by making the regional school district a new taxing district, and by the district assessing each member town an amount determined, not by the number of its students serviced by the district, but by a new uniform mill rate multiplied by the total assessed value of the town's real property. Thus, under this formula, each town would contribute to the education of its students by the board according to the value of its real property. The wealthier the town, in terms of its taxable real property, the more it would contribute to the educational expenses of all of the students in the district, irrespective of the number of its students attending district schools each year.

The plaintiffs claim that their complaint presents a justiciable claim. The defendant claims, to the contrary, that it does not and, by way of an alternate ground on which to affirm the trial court's judgment, that the plaintiffs lack standing. We conclude that: (1) the plaintiffs' claim is justiciable; and (2) the question of the plaintiffs' standing cannot be determined properly on the present record, and that an evidentiary hearing is necessary for that determination.

# I

## JUSTICIABILITY

We first note that, in deciding whether the complaint presents a justiciable claim, we make no determination regarding its merits. We do not consider, for example, whether it would survive a motion to strike on the ground that it does not state a valid cause of action for deprivation of the constitutional rights asserted, or whether it would survive a motion for summary judgment on the basis that the undisputed facts show that no such constitutional deprivations have occurred. We consider only whether "the matter in controversy [is] capable of being adjudicated by judicial power . . . ." *Nielsen* v. *State*, 236 Conn. 1, 6, 670 A.2d 1288 (1996).

"The principles that underlie justiciability are well established. Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy be capable of being adjudicated by judicial power . . . and (4) that the determination of the controversy will result in practical relief to the complainant. . . . *State* v. *Nardini*, 187 Conn. 109, 111–12, 445 A.2d 304 (1982); *Pellegrino* v. *O'Neill*, 193 Conn. 670, 674, 480 A.2d 476, cert. denied, 469 U.S. 875, 105 S. Ct. 236, 83 L. Ed. 2d 176 (1984). The third requirement for justiciability,

[commonly referred to as] the political question doctrine, is based on the principle of separation of powers. *Nielsen* v. *Kezer*, 232 Conn. 65, 75, 652 A.2d 1013 (1995); *Pellegrino* v. *O'Neill,* supra, 680. The characterization of [an issue] as political is a convenient shorthand for declaring that some other branch of government has constitutional authority over the subject matter superior to that of the courts. *Pellegrino* v. *O'Neill,* supra, 680. The fundamental characteristic of a political question, therefore, is that its adjudication would place the court in conflict with a coequal branch of government in violation of the primary authority of that coordinate branch. *Baker* v. *Carr,* [369 U.S. 186, 217, 82 S. Ct. 691, 7 L. Ed. 2d 663 (1962)]. *Nielsen* v. *Kezer,* supra, 74.

"Whether a controversy so directly implicates the primary authority of the legislative or executive branch, such that a court is not the proper forum for its resolution, is a determination that must be made on a case-by-case inquiry. Id., 74–75. Prominent on the surface of any case held to involve a political question is found a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question. Unless one of these formulations is inextricable from the case at bar, there should be no dismissal for nonjusticiability on the ground of a political question's presence. *Baker* v. *Carr,* supra, 369 U.S. 217; see *Fonfara* v. *Reapportionment Commission,* 222 Conn. 166, 184–85, 610 A.2d 153

(1992)." (Internal quotation marks omitted.) *Nielsen v. State,* supra, 236 Conn. 6–8. Furthermore, simply because the case has a "connection to the political sphere [is not] an independent basis for characterizing an issue as a 'political question' . . . ." *Board of Education v. Naugatuck,* 257 Conn. 409, 425, 778 A.2d 862 (2001).

In applying these standards to the plaintiffs' complaint, we first address the specific forms of relief that the plaintiffs seek. If we were to construe the complaint as requesting *only* that a *court,* having determined that the plaintiffs' constitutional claims are meritorious, order the district to establish itself as a taxing district, and set the taxing powers and standards suggested by the plaintiffs, we would have grave doubts about the justiciability of the claim, as the defendant suggests. In that case, it is very likely that the claim would fall within one or more of the categories of nonjusticiability.

We do not, however, view the plaintiffs' prayer for relief so narrowly. Although the plaintiffs do seek, in part, such an order from the court,[8] and although the text of the complaint presents such a remedy as the only way to vindicate the plaintiffs' rights, a separate prayer for relief is simply "[t]hat judgment be entered declaring that . . . § 10-51 (b) is unconstitutional on its face and as applied by [the board]." When a complaint is challenged by a motion to dismiss, we view its allegations in the light favorable to the pleader. See *Brookridge District Assn.* v. *Planning & Zoning Commission,* 259 Conn. 607, 681, 793 A.2d 215 (2002). We see no reason why the same principle should not apply

---

[8] The plaintiffs' third prayer for relief requests "[t]hat [the board] be directed to cease its present system of cost allocation among member towns, and be directed to re-assess its education costs for current and future fiscal years so that the tax burden falls equally on all taxpayers in the region, in conformity with the constitutions of the State of Connecticut and of the United States . . . ."

to the prayer for relief. This latter prayer for relief is susceptible of an interpretation that would leave the formulation of the appropriate remedy to the legislative branch, rather than requiring the judicial branch to entangle itself in what probably would be the nonjudicial function of establishing a taxing district. Furthermore, there is precedent for this court, having determined that a particular legislative scheme is unconstitutional, to leave the remedy to the legislative branch, at least initially. See, e.g., *Sheff* v. *O'Neill*, 238 Conn. 1, 678 A.2d 1267 (1996); *Horton* v. *Meskill*, 172 Conn. 615, 376 A.2d 359 (1977). We, therefore, consider the question of justiciability on the premise that the plaintiffs seek a declaration of the unconstitutionality of § 10-51 (b), with the remedy that they propose to be considered by the legislative branch. With this background in mind, we turn to the question of the justiciability of the complaint.

As *Nielsen* v. *State*, supra, 236 Conn. 7, teaches, there are essentially six circumstances in which a given issue may be characterized as a nonjusticiable political question, namely, where: (1) the text of the constitution demonstrates that the issue is committed to another branch of government; (2) there are no judicially discoverable and manageable standards for resolving the issue; (3) in order to decide the case, the court would be required to make an initial policy determination of the kind that clearly involves nonjudicial discretion; (4) the court would be required to express a lack of due respect to a coordinate branch of government; (5) there is an unusual need for unquestioning adherence to a preexisting political decision; or (6) there is a potential of embarrassment from multifarious pronouncements by various other governmental departments on one question. In order for any of these circumstances to apply, however, it must be "inextricable from the case at bar . . . ." (Internal quotation marks omitted.) Id.,

8. If that inextricability is lacking, "there should be no dismissal for nonjusticiability on the ground of a political question's presence." (Internal quotation marks omitted.) Id.

On its face, the plaintiffs' complaint presents a straightforward claim that § 10-51 (b), facially and as applied, violates certain of their constitutional rights. We cannot conclude that any of the "political question" categories is inextricably linked to the present case.

There is no textual commitment of the question presented in this case, namely, whether the fiscal formula set forth by § 10-51 (b) violates the plaintiffs' rights to due process or equal protection, to any coordinate branch of government. Compare id., 9 (implementation of constitutional spending cap textually committed to general assembly). Although, of course, the manner in which any governmental function, educational or otherwise, is financed is generally a matter falling within the fiscal power of the legislative branch, that does not mean that the constitution textually commits to that branch any constitutional challenge to a particular system of financing.

There are easily discoverable and manageable judicial standards for determining the merits of the plaintiffs' claim. Those are the traditional standards for determining whether a statute meets the requirements of due process; see, e.g., *Packer* v. *Board of Education,* 246 Conn. 89, 106, 717 A.2d 117 (1998) (setting forth appropriate standard for deciding whether statute unconstitutionally vague and therefore violative of due process principles); or equal protection of the laws. See, e.g., *Donahue* v. *Southington,* 259 Conn. 783, 794, 792 A.2d 76 (2002); cf. *Board of Education* v. *Naugatuck,* supra, 257 Conn. 425 (in deciding question, court called upon to perform basic function of statutory interpretation).

Similarly, we cannot conclude that, in deciding the merits of the plaintiffs' constitutional claim, the courts would be inextricably involved in making an initial policy determination of a clearly nonjudicial, discretionary nature. Whenever a court engages in the process of determining whether a statute violates the constitution, matters of policy admittedly enter into the analysis. That does not mean, however, that, in applying the appropriate constitutional standards in the present case, we would be required to make some "initial policy determination of a kind clearly for nonjudicial discretion . . . ." *Nielsen* v. *State*, supra, 236 Conn. 7.

We see nothing in the plaintiffs' claim of unconstitutionality, moreover, that would, if we were to undertake to decide it or if it were found to be meritorious, involve the courts in expressing a lack of due respect for coordinate branches of government. Of course, deciding that a statute is unconstitutional, either on its face or as applied, is a delicate task in any event, and one that the courts perform only if convinced beyond a reasonable doubt of the statute's invalidity. See *Hammond* v. *Commissioner of Correction*, 259 Conn. 855, 876, 792 A.2d 774 (2002). That alone does not mean, however, that, if such a result must be reached on the facts and the law, such a declaration expresses lack of due respect for the legislative branch. Performing such a task simply exemplifies the fundamental judicial burden of determining whether a statute meets constitutional standards. See, e.g., *Marbury* v. *Madison*, 5 U.S. (1 Cranch) 137, 177, 2 L. Ed. 60 (1803).

Finally, there are no multifarious pronouncements by other governmental departments on the question presented by the complaint. Thus, we need not determine whether any such pronouncements would produce potential embarrassment by undertaking to adjudicate the plaintiffs' claim.

The defendant argues, however, that, if the court were to adjudicate the plaintiffs' claim, it "would be 'expressing a lack of respect due a coordinate branch of government' . . . and [would be] improperly interfering with the 'need for unquestioning adherence to political decision[s] already made,' in violation of the mandates" set forth in *Nielsen* v. *State*, supra, 236 Conn. 7, and *Pellegrino* v. *O'Neill*, supra, 193 Conn. 670. (Citations omitted.) This argument is premised on the undisputed facts that: (1) the plaintiffs do not seek to vindicate students' state fundamental constitutional right to education; compare *Horton* v. *Meskill*, supra, 172 Conn. 615; but rather to vindicate their constitutional rights as taxpayers; (2) there is a legislatively provided procedure by which the taxpayers of Canaan may withdraw from the district; see General Statutes § 10-63a et seq.; and (3) the plaintiffs may seek to have their town avail itself of that process, which would "[involve], however, convincing [their] fellow electors, rather than a single jurist." We are not persuaded that these considerations render this claim nonjusticiable.

First, this analysis suggests, without explicitly saying so, that the coordinate branch of government to which due respect is owed is the legislative body of Canaan, because that is the body that, presumably, has chosen to join and remain in the district. We do not think that a local legislative body is what is meant by a "coordinate branch of government" in the context of the nonjusticiability doctrine; *Nielsen* v. *State*, supra, 236 Conn. 7; because local legislative bodies, unlike the General Assembly, are not branches of government coordinate with the judicial branch. To the extent, moreover, that the defendant refers, instead, to the state legislature, which enacted § 10-51 (b), as that coordinate branch of government, we reject that argument as rendering the issue presently before us nonjusticiable. Simply because the legislature has passed a statute adopting

a particular fiscal formula cannot mean that a court may not entertain a constitutional challenge to that formula.

Second, although it is true that Canaan joined and could withdraw from the district through its own internal political processes, that is insufficient to invoke the strand of nonjusticiability jurisprudence that rests on the "unusual need for unquestioning adherence to a political decision already made . . . ." Id. Courts sit to entertain claims based on alleged violations of constitutional rights and, if those claims are meritorious, to vindicate those rights by appropriate declarations and, if necessary, remedies. Unless the "unusual need" for such "unquestioning adherence" to a preexisting political decision is inextricable from the claim, "there should be no dismissal for nonjusticiability on the ground of a political [question] . . . ." Id., 7–8.

Thus, whatever that strand may mean in any given context, one thing that it must mean, at the least, is that the preexisting political decision is of such a politically significant or sensitive nature that there is an unusual need for unquestioned adherence to it, despite the fact that the statute embodying that decision may be invalidated by the challenge to it in question. Only such a basic meaning would justify the court abjuring its traditional role of entertaining such challenges. Put another way, the principle that a case should not be dismissed for nonjusticiability as a political question unless an unusual need for unquestioned adherence to that decision is inextricable from the case, means that courts should view such cases with a heavy thumb on the side of justiciability, and with the recognition that, simply because the case is connected to the political sphere, it does not necessarily follow that it is a political question. *Board of Education* v. *Naugatuck,* supra, 257 Conn. 425.

Canaan's local political decision to remain in the district under the statutory formula being challenged by

the plaintiffs is not such a decision. We simply fail to see the unusual need for unquestioning adherence to that decision, in the face of the plaintiffs' claim that the formula is in violation of their constitutional rights.

## II

## STANDING

As an alternate ground on which to affirm the judgment of dismissal, the defendant claims that the plaintiffs have not established standing as taxpayers. Specifically, the defendant asserts that: (1) under *Sadloski* v. *Manchester*, 235 Conn. 637, 646–50, 668 A.2d 1314 (1995), the entire fiscal picture must be taken into account in determining whether a taxpayer, challenging a particular program, has been harmed thereby; and (2) the inequalities of which the plaintiffs complain have been addressed and remedied by General Statutes §§ 10-262f through 10-262j, the educational cost sharing formula, which is specifically designed to address inequalities of wealth among the towns in the state. We agree that this question is controlled by our decision in *Sadloski*. We also conclude, however, that this record presents an insufficient basis on which we confidently can determine the question of standing pursuant to that decision.

In *Sadloski*, we reaffirmed the basic tenets of taxpayer standing. "The plaintiff's status as a taxpayer does not automatically give her standing to challenge alleged improprieties in the conduct of the defendant town. *Alarm Applications Co.* v. *Simsbury Volunteer Fire Co.*, 179 Conn. 541, 549, 427 A.2d 822 (1980); *Bell* v. *Planning & Zoning Commission*, 174 Conn. 493, 497–98, 391 A.2d 154 (1978); *Belford* v. *New Haven*, 170 Conn. 46, 52–53, 364 A.2d 194 (1975) . . . . The plaintiff must also allege and demonstrate that the allegedly improper municipal conduct cause[d her] to suffer some pecuniary or other great injury. . . . *Alarm*

*Applications Co.* v. *Simsbury Volunteer Fire Co.*, supra [549]; *Belford* v. *New Haven*, supra, 53; *Atwood* v. *Regional School District No. 15*, 169 Conn. 613, 617, 363 A.2d 1038 (1975); *Bassett* v. *Desmond*, 140 Conn. 426, 430, 101 A.2d 294 (1953) . . . . It is not enough for the plaintiff to show that her tax dollars have contributed to the challenged project; *Bell* v. *Planning & Zoning Commission*, supra, 498 . . . the plaintiff must prove that the project has directly or indirectly increased her taxes; *Atwood* v. *Regional School District No. 15*, supra, 617; or, in some other fashion, caused her irreparable injury in her capacity as a taxpayer. *Bassett* v. *Desmond*, supra [430]; *Cassidy* v. *Waterbury*, 130 Conn. 237, 245, 33 A.2d 142 (1943)." (Internal quotation marks omitted.) *Sadloski* v. *Manchester*, supra, 235 Conn. 647. We then held, in effect, that, because standing is a practical concept, common sense suggests that a taxpayer who challenges a part of a particular governmental program must demonstrate his or her injury in the entire fiscal context of that program, taking into account both the burdens and benefits of the program, and not just by demonstrating that the presumably burdensome part of the program itself, divorced from the larger program of which it is a part, causes injury. Id., 648.

The defendant does not challenge, for standing purposes, the sufficiency of the plaintiffs' allegation that the tax burdens on the plaintiffs and other taxpayers in Canaan for educating their students is substantially greater than the equivalent cost to taxpayers in every other member town in the district except for North Canaan. This presumably satisfies the pleading requirement that a taxpayer allege that the challenged statute "in some . . . fashion, [other than a simple increase in taxes] caused her irreparable injury in her capacity as a taxpayer." (Internal quotation marks omitted.) Id., 647. The defendant submits, instead, that, as a legal

matter, the formula set forth in § 10-51 (b) must be evaluated in light of the equalization formulas set forth in the educational cost sharing statutes, and as a factual matter, those formulas demonstrate that the plaintiffs have not in fact suffered the injury of which they complain sufficiently to demonstrate their standing as taxpayers.[9]

We cannot confidently make that determination on the state of the present record. In *Sadloski*, there had been a full evidentiary trial that focused, at least in part, on whether the taxpayer plaintiff had been harmed, in an overall sense, by the specific tax abatement that she challenged. Id., 641. The trial court, moreover, found that the assessed value of the property in question after the challenged abatement was tens of millions of dollars more than before the project. Id., 642. On the basis of that finding, and on the fact that the record disclosed that the challenged tax abatement produced an overall net financial tax benefit to the town, we were able to conclude with confidence that the plaintiff had not established her claimed taxpayer standing. Id., 650.

There has been no such hearing and no such finding in the present case, and the record does not establish with any certainty just how the educational cost sharing formula may remedy the taxpayer harm alleged by the plaintiffs. It may well be that, as the defendant contends, the educational cost sharing formula is sufficiently closely allied with the formula set forth in § 10-51 (b) that its benefits must be taken into account, and that those benefits, overall, sufficiently compensate for the

---

[9] The defendant also asserted, at oral argument before this court, that implicit in the question of the plaintiffs' standing is the fact that, by Canaan remaining in the district, it is relieved of the obligation of constructing its own high school, and that, therefore, the plaintiffs cannot establish taxpayer harm, considering the alternative. We need not address that assertion, which would require a factual basis. The defendant is free to present it to the trial court in the evidentiary hearing following our remand.

taxpayer harm claimed by the plaintiffs. Such findings, however, cannot be reached on the present record. An evidentiary hearing is therefore required.

The judgment is reversed and the case is remanded to the trial court for a hearing on the question of the plaintiffs' standing as taxpayers, and for further proceedings according to law.

In this opinion the other justices concurred.