[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO DISMISS
In Sheff v. O'Neill, 238 Conn. 1, 678 A.2d 1267 (1996), the Supreme Court, employing the methodology of Horton v. Meskill, 172 Conn. 615,376 A.2d 359 (1977) (Horton I), rendered the plaintiffs declaratory relief while retaining jurisdiction due to "the complexities of developing a legislative program that would respond to the constitutional deprivation that the plaintiffs had established. . . ." Sheff v.O'Neill, supra, 238 Conn. 45. Noting that further action had been stayed in Horton I to allow the general assembly an opportunity to take appropriate legislative action, the court in Sheff concluded that "[p]rudence and sensitivity to the constitutional authority of coordinate branches of government counsel the same caution in this case." Id., 46. The court added that "[w]e direct the legislature and executive branch to put the search for appropriate remedial measures at the top of their respective agendas." Id.
As noted by the plaintiffs in the present case, one of the remedial measures taken was Special Act 1997, No. 4 (S.A. 97-4), which, among other things, dissolved the Hartford board of education and created the state board of trustees to oversee the Hartford public school system. Special Act 2001, No. 7 (S.A. 01-7), approved July 6, 2001, extended the board of trustees' oversight through December 2, 2002. The board of trustees is scheduled to terminate on that day with its duties being transferred to the new Hartford board of education. Four members of the new board of education were recently elected, and three were recently appointed by Mayor Perez. The plaintiffs now ask this court to intervene in that remedial measure, in that transfer, by declaring the specific act terminating the board of trustees unconstitutional and by enjoining the transfer to the new board of education. CT Page 15330-j
On November 26, 2002, this court heard argument on the defendants' motions to dismiss.[1] This court will focus on two of the grounds raised by the defendants: justiciability and the prior pending action doctrine.[2]
"A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction." (Internal quotation marks omitted.) Blumenthal v. Barnes, 261 Conn. 434, 442, 802 A.2d 844 (2002). "A case that is nonjusticiable must be dismissed for lack of subject matter jurisdiction." Mayer v. Biafore, Florek O'Neill, 245 Conn. 88,91, 713 A.2d 1267 (1998). "Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute. . . . (2) that the interests of the parties be adverse. . . . (3) that the matter in controversy be capable of being adjudicated by judicial power . . . and (4) that the determination of the controversy will result in practical relief to the complainant. . . . The third requirement for justiciability, the political question doctrine, is based on the principle of separation of powers. . . . The characterization of [an issue] as political is a convenient shorthand for declaring that some other branch of government has constitutional authority over the subject matter superior to that of the courts. . . . The fundamental characteristic of a political question, therefore, is that its adjudication would place the court in conflict with a coequal branch of government in violation of the primary authority of that coordinate branch." (Citations omitted; internal quotation marks omitted.) Nielsenv. State, 236 Conn. 1, 6-7, 670 A.2d 1288 (1996). "Whether a controversy so directly implicates the primary authority of the legislative or executive branch, such that a court is not the proper forum for its resolution, is a determination that must be made on a case-by-case inquiry." (Internal quotation marks omitted.) Id., 7.
In Nielsen, the court held that the plaintiffs had "raised a claim that inextricably presents a political question not amenable to judicial resolution and that seeks relief that a court cannot provide without an impermissible intrusion upon the prerogatives and functions of the coordinate branches of government." Nielsen v. State, supra, 236 Conn. 9. In Seymour v. Region One Board of Education, 261 Conn. 475, 803 A.2d 318
(2002), a case dealing with the funding of regional school districts, the court further discussed the political question criteria discussed inNielson. "As Nielsen v. State . . . teaches, there are essentially six circumstances in which a given issue may be characterized as a nonjusticiable political question, namely, where: (1) the text of the constitution demonstrates that the issue is committed to another branch of government; (2) there are no judicially discoverable and manageable CT Page 15330-k standards for resolving the issue; (3) in order to decide the case, the court would be required to make an initial policy determination of the kind that clearly involves nonjudicial discretion; (4) the court would be required to express a lack of due respect to a coordinate branch of government; (5) there is an unusual need for unquestioning adherence to a preexisting political decision; or (6) there is a potential of embarrassment from multifarious pronouncements by various other governmental departments on one question. In order for any of these circumstances to apply, however, it must be inextricable from the case at bar . . . If that inextricability is lacking, there should be no dismissal for nonjusticiability on the ground of a political question's presence." (Citations omitted; internal quotation marks omitted.) Seymourv. Region One Board of Education, supra, 261 Conn. 484-85.
In this court's opinion, a number of those circumstances outlined inNielsen and Seymour that would characterize a given issue as a nonjusticiable political question are inextricably bound in the present case to the relief sought by the plaintiffs. The legislative branch of government is clearly involved both from a constitutional sense as set forth in article eighth, § 1 of the constitution of Connecticut, as well as through its actions based in great part on the directions of the Supreme Court in Sheff. The legislature has adopted an extensive program for the operation of the Hartford public school system as set forth, in part, in S.A. 97-4, S.A. 01-7, and Public Acts 1997, No. 97-290 (P.A. 97-290). Indeed, in the debate on House Bill No. 6890, which was enacted as P.A. 97-290 and codified at various sections of Title 10 of the General Statutes, Senator Thomas P. Gaffey stated: "[T]oday we continue to meet the challenge proffered upon us by the Supreme Court in the Sheffv. O'Neill decision. We started about six weeks ago by taking the unprecedented step in a landmark bill to have establishment of a State Board of Trustees to assume the governance of the Hartford School District to get to the heart of improving the quality of education in the City of Hartford and the Hartford School District, to direct the terrible and equitable allocation of resources. We accomplished that along with our colleagues in the House and along with the Governor. And all the bills related to Sheff v. O'Neill have to be viewed upon in the context of a package. And the bill that passed with regard to the Hartford School District, with this bill that's before us currently and the bill that we'll take up a little later. . . ." 40 S. Proc., Pt. 12, 1997 Sess., p. 4170.
Notwithstanding that the legislation is now in effect and the programs and policies are now being implemented, the plaintiffs are requesting that this court not only second guess the will of the legislature, but also ignore the voters of the city of Hartford and without any CT Page 15330-l standards, keep the state board of trustees in power. This court concludes that the plaintiffs' claims can be characterized as nonjusticiable political questions and thus, should warrant dismissal on the ground that the court lacks subject matter jurisdiction.
The present action, however, cannot be decided independent of theSheff remand. The action that the plaintiffs posit is unconstitutional was passed as a direct consequence of Sheff and, further, continues to be under the review of the remand court in Sheff. Given these circumstances, therefore, it cannot be argued that the Superior Court lacks subject matter jurisdiction to entertain the plaintiffs' claims.
This then leads us to the additional ground raised by the defendants as a basis for dismissing the plaintiffs' action — the prior pending action doctrine. In In re Jessica M., 71 Conn. App. 417, 427 n. 7,802 A.2d 197 (2002), the court stated that "[w]e have explicated the prior pending action doctrine as follows: The pendency of a prior suit of the same character, between the same parties, brought to obtain the same end or object, is, at common law, good cause for abatement. It is so, because there cannot be any reason or necessity for bringing the second, and, therefore, it must be oppressive and vexatious. This is a rule of justice and equity, generally applicable, and always, where the two suits are virtually alike, and in the same jurisdiction. " (Internal quotation marks omitted.) In Sandvig v. A. Dubreuil Sons, Inc.,68 Conn. App. 79, 87, 789 A.2d 1012 (2002), the court added, "[w]e must examine the pleadings to ascertain whether the actions are virtuallyalike . . . and whether they are brought to adjudicate the sameunderlying rights." (Emphasis in original; internal quotation marks omitted.) Although the prior pending action doctrine does not truly implicate the subject matter jurisdiction of the court, the motion to dismiss is the proper vehicle to request that a trial court dismiss the second action. See Halpern v. Board of Education, 196 Conn. 647, 652
n. 4, 495 A.2d 264 (1985); Gaudio v. Gaudio, 23 Conn. App. 287, 294,580 A.2d 1212, cert. denied, 217 Conn. 803, 584 A.2d 471 (1990).
In reviewing the first test, whether the parties are the same, this court finds sufficient similarity between the Sheff plaintiffs and the plaintiffs in the present case to find that test satisfied. Both sets of plaintiffs, the eighteen school children of Sheff and the parents filing on behalf of their minor school children in the present case, are essentially no different. As noted by the court in Gaudio, supra,23 Conn. App. 296, "[s]uperficial differences in the parties are not enough to overcome dismissal under the prior pending action doctrine."
Similarly, as in Sheff, the plaintiffs in the present case seek both CT Page 15330-m declaratory and injunctive relief to remedy educational inequities and deficiencies in the Hartford public school system. It is clear that theSheff plaintiffs alleged a deprivation of their right to a substantially equal education as a result of the severe racial and ethnic isolation that exists in the Hartford public school system. Sheff, supra,238 Conn. 35. The plaintiffs herein allege a somewhat similar message, although the issue of racial isolation is not emphasized. In paragraph twelve of their complaint, they allege that "the disparities in educational opportunity to which Hartford public school system students are subjected violate the fundamental right to an education and to a viable education system to which the children of the plaintiffs . . . are entitled." In paragraph thirty-one, the plaintiffs allege that "the defendants have failed to enhance the quality, adequacy, and equality of educational opportunities in Hartford to a constitutionally adequate level." In paragraph thirty-three, the plaintiffs allege that "the defendants have failed to achieve district goals, legislative requirements, and objectives all of which are necessary to satisfy the mandates of Special Act 97-4 and the Connecticut Constitution." In paragraph forty-eight, they allege that "the poor quality, inadequacy and inequality of educational opportunities in the Hartford public school system have a detrimental impact on the lives of the Hartford school children and plaintiffs. In paragraph fifty, they allege that "the continued existence of segregation in Hartford schools has severely deprived Hartford students of the valuable social and educational benefits derived from a diverse learning environment." The list of allegations goes on. The essential point is, however, that the allegations, which are surely serious, involve those very issues that continue to be monitored by the trial court as a result of the remand inSheff.
As noted by the plaintiffs, the legislature enacted S.A. 97-4 in direct response to the directions of the Supreme Court. The creation of the state's trusteeship was part of the legislature's package of programs for Hartford. Thus, aside from whether this court would review this controversy if Sheff were not pending due to the political question it presents, the specific request for relief and the other remedies the plaintiffs seek are inextricably tied to those now subsumed by the Sheff
remand. The efficacy of the state board of trustees as well as the resumption of duties by the new Hartford board of education cannot be reviewed independent of the Sheff review. Hence, "the same underlying rights . . . which the plaintiff [has] asserted in the second action [will] be adjudicated and necessarily determined in the prior pending action." (Internal quotation marks omitted.) Halpern v. Board ofEducation, supra, 196 Conn. 655. Accordingly, for the above reasons, the prior pending action doctrine is implicated and the defendants' motion to CT Page 15330-n dismiss is granted.
 ________________ Berger, J.