GABRIEL SEYMOUR ET AL. *v.* REGION ONE
BOARD OF EDUCATION ET AL.
(SC 17184)

Sullivan, C. J., and Norcott, Palmer, Vertefeuille and Zarella, Js.

Argued November 29, 2004—officially released June 14, 2005

*Gabriel Seymour*, pro se, with whom, on the brief, was *Peter L. Truebner*, for the appellants (named plaintiff et al.).

*Ralph E. Urban,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Richard J. Lynch,* assistant attorney general, for the appellee (defendant Richard Blumenthal).

*Opinion*

PALMER, J. This case returns to us for a second time. The named plaintiff, Gabriel Seymour, among others,[1] commenced this declaratory judgment action challenging the constitutionality of General Statutes § 10-51 (b),[2] which establishes the formula by which the state's seventeen regional school districts allocate costs among their member towns. After the trial court, *Cremins, J.,* dismissed the action on the ground that it presented a nonjusticiable political question and rendered judgment thereon, the plaintiff appealed. We reversed the trial

---

[1] In addition to Seymour, Thomas R. Coolidge, Susan Dempsey, Stephen W. Jenks and Joyce Schurk, also were plaintiffs. Coolidge, Dempsey and Jenks have since withdrawn from the action. For reasons set forth in footnote 12 of this opinion, Schurk lacks standing to pursue this appeal. Therefore, the only remaining plaintiff is Seymour, whom we refer to throughout this opinion as the plaintiff.

[2] General Statutes § 10-51 (b) provides: "For the purposes of this section, 'net expenses' means estimated expenditures, including estimated capital expenditures, less estimated receipts as presented in a regional school district budget. On the date or dates fixed by the board, each town in the district shall pay a share of the cost of capital outlay, including costs for school building projects under chapter 173, and current expenditures necessary for the operation of the district. The board shall determine the amount to be paid by each member town. Such amount shall bear the same ratio to the net expenses of the district as the number of pupils resident in such town in average daily membership in the regional school district during the preceding school year bears to the total number of such pupils in all the member towns, provided that the board may recalculate such amount based on the number of pupils in average daily membership in the regional school district for the current school year and may adjust each member town's payment to the regional school district for the following fiscal year by the difference between the last such payment and the recalculated amount. Until the regional school district has been in operation for one year, such amounts shall be based on the average daily membership of pupils in like grades from each of such towns at any school at which children were in attendance at the expense of such towns during the preceding school year."

court's judgment. *Seymour* v. *Region One Board of Education*, 261 Conn. 475, 477, 492, 803 A.2d 318 (2002). We concluded, however, that the trial court record was inadequate for a determination of whether the plaintiff had standing to bring the action and, accordingly, we remanded the case for an evidentiary hearing on that issue. Id. At the conclusion of that hearing, the trial court, *Black, J.*, dismissed the action for lack of standing and rendered judgment thereon, from which the plaintiff appealed.[3] We affirm the judgment of the trial court.[4]

The following relevant facts and procedural history are set forth in our opinion in *Seymour* v. *Region One Board of Education*, supra, 261 Conn. 475. "The [plaintiff], who [is a taxpayer] in the town of Canaan, brought this declaratory judgment action against the defendants, Region One board of education[5] (board) and Richard Blumenthal, the attorney general,[6] seeking a judgment: (1) declaring § 10-51 (b) unconstitutional on its face and as applied; and (2) directing the board to change its system of cost allocation among its member towns so that the tax burden falls equally on all taxpayers in the regional school district served by the board. The [attorney general] moved to dismiss the complaint on the grounds that: (1) the [plaintiff lacks] standing;

---

[3] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c).

[4] The plaintiff also claims that the trial court improperly denied her motion for a protective order in relation to several discovery requests. We do not reach this claim in light of our conclusion that the trial court properly dismissed the plaintiff's action for lack of standing.

[5] The Region One board of education is an elected body established pursuant to General Statutes § 10-46 for the purpose of administering the affairs and educational programs of the Region One school district. The Region One school district is comprised of the towns of Canaan, Cornwall, Kent, North Canaan, Salisbury and Sharon.

[6] The towns of Canaan and Salisbury also intervened as defendants, and they, along with the board, adopt the brief filed by the attorney general in this court.

and (2) the [plaintiff's] claims are nonjusticiable because they present a political question. . . .

"In [her] complaint, the [plaintiff] made the following allegations. [She is a taxpayer] in Canaan, which is one of the six member towns of [the Region One school district] . . . . [See footnote 5 of this opinion.] The costs of education for high school students and for certain [students attending] kindergarten through eighth grade . . . are assessed on the towns by the board according to the formula set forth [in] § 10-51 (b). That formula assesses each member town an amount that 'bear[s] the same ratio to the net expenses of the district as the number of pupils resident in such town in average daily membership in the . . . district during the preceding school year bears to the total number of pupils in all the member towns . . . .' General Statutes § 10-51 (b). Because '[l]ocal property taxes are the principal source of revenue for public schools,' because the statutory formula 'disregards variations in the total taxable property in each town,' and because Canaan has substantially less valuable taxable property than every other town in the district, except for North Canaan, 'the tax burden on [the plaintiff] and other taxpayers' in Canaan for educating their students 'is substantially greater than the equivalent cost to taxpayers in every other member town . . . except for North Canaan.'

"The [plaintiff] further alleged that 'education costs constitute the single largest expense in most town budgets,' and that 'the unequal burdens of the present regional cost allocation formula sharply impact the total tax burden on small town taxpayers,' such as the [plaintiff]. 'As a result, § 10-51 (b) unfairly discriminates against small Connecticut towns by forcing them to pay an unequal share of the expenses of educating students [as compared to] their bigger and wealthier neighbors.'

"In addition, the [plaintiff] further alleged that '[t]he incidents of taxation should fall, as far as possible, equally on all similarly situated. Such equal taxation is mandated by the due process and equal protection provisions of both the United States and Connecticut [c]onstitutions. All persons similarly circumstanced should be treated alike. . . . The Region One cost assessment formula based simply on student ratios violates this constitutional principle because the tax burden per student falls much more heavily upon the taxpayers of Canaan (and North Canaan) than on similarly situated taxpayers of surrounding municipalities. This fundamental inequality of taxation can only be corrected by directing the establishment of a uniform tax rate applicable to all taxpayers throughout the Region.' The [plaintiff] offered, by way of further allegation, a 'constitutional . . . method for determining regional cost allocations . . . by dividing the projected total net education expenses for the region by the total equalized Grand List of taxable property for all member towns combined, thereby establishing a single regional [mill] rate to be assessed equally against all property in all member towns.' "[7] *Seymour* v. *Region One Board of Education,* supra, 261 Conn. 477–80.

[7] We thereafter summarized "[t]he core of the [plaintiff's] complaint . . . as follows. First, the statutory formula set by § 10-51 (b), which requires each town to contribute to the district's educational expenses based on the per pupil cost of education—i.e., the total educational expenses of the district divided by the number of the town's resident students served thereby—deprives the [plaintiff], who [is a taxpayer] of a relatively property tax poor town, of [her] state and federal constitutional rights to due process of law and equal protection of the laws. Second, the only way in which this unconstitutionality may be remedied is by making the district into a single taxing district for the purposes of education, with a uniform mill rate. The district would then assess each town an amount based, not on the per pupil cost of education, but on the value of the real property in that town—i.e., by multiplying the uniform mill rate by the total assessed value of the town's real property." *Seymour* v. *Region One Board of Education,* supra, 261 Conn. 480.

The attorney general filed a motion to dismiss, claiming that the allegations of the complaint raised a nonjusticiable political question and, further, that the plaintiff lacked standing to bring the action. The trial court, *Cremins, J.*, agreed that the plaintiff's claim was nonjusticiable and, accordingly, dismissed the complaint on that ground. The trial court, *Cremins, J.*, did not reach the issue of whether the plaintiff lacked standing to bring the action. The plaintiff appealed, and we concluded, contrary to the determination of the trial court, *Cremins, J.*, that the plaintiff's claim is justiciable. Id., 484–89. With respect to the attorney general's proposed alternate ground for affirmance, namely, that the plaintiff lacked standing, we concluded that the record was inadequate for our determination of that issue. Id., 489. We further concluded that an evidentiary hearing was essential to that determination and, consequently, remanded the case for such a hearing. Id., 492.

The trial court, *Black, J.*,[8] thereafter conducted an evidentiary hearing. The attorney general adduced testimony from two witnesses, Lauren Elliott, a certified tax assessor and property valuation specialist, and Robert Brewer, the director of the division of grants management for the state department of education. Elliott, who was certified as an expert witness without objection, had been a tax assessor for seventeen years and, as of the date of the hearing, served as tax assessor for the town of Canaan. She indicated that, in the preceding five years, she had conducted the property reevaluations for five of the six towns comprising the Region One school district, namely, Salisbury, Sharon, Kent, Cornwall and Canaan. Elliott testified that the plaintiff owns two properties in Canaan, a parcel consisting of 6.05 acres on which the plaintiff's house is located, and a second, unimproved parcel, consisting of 4.11 acres, which is adjacent to the first parcel. As of 2001, the assessed

---

[8] Hereinafter, all references to the trial court are to the court, *Black, J.*

value of the parcels was $103,100 and $28,200, respectively. For the 2002–2003 fiscal year, the plaintiff paid property tax of $3221.88 on the first parcel and $881.25 on the second parcel, or a total of $4103.13. In response to a question regarding how much the plaintiff would pay in property taxes if her properties were located in the other Region One school district towns, Elliott indicated that the plaintiff's property taxes would remain approximately the same in three of the other towns and would be notably higher in one of the other towns. According to Elliott's figures, they would be notably more in Salisbury, slightly more in Kent and slightly less in Cornwall and Sharon.[9] Elliott explained that she was able to generate the hypothetical assessments by entering the characteristics of those properties, such as lot size and, for the improved parcel, the age, condition and size of the house, into a computerized assisted mass appraisal program actually used by each town to generate real property assessments.

Brewer testified that he heads the division within the state department of education that oversees the management and distribution of approximately $2.5 billion annually in state and federal education grants. Primary among them is the education cost sharing grant (ECS), which amounts to approximately $1.5 billion annually in education cost assistance that is distributed to the state's cities and towns. Brewer explained that ECS is an equalization grant designed to level the playing field between the state's wealthier and needier municipalities in terms of their ability to fund education. The amount of ECS money that a particular municipality

---

[9] Specifically, Elliott testified that the taxes on properties identical to that of the plaintiff would be $3643.25 in Cornwall, $4552.18 in Kent, $3804.19 in Sharon, and $5265.72 in Salisbury. Elliott arrived at these amounts by multiplying the computer generated assessment figures by each town's mill rate. Elliott did not calculate what the plaintiff's taxes would have been if her property were located in North Canaan, the smallest and poorest of the Region One school district towns.

receives depends on a variety of factors, including that municipality's equalized net grand list, median household income, per capita income and the number of students attending public school, a number that itself is weighted for factors such as poverty, English language proficiency and standardized test scores. Brewer further testified that, because money is distributed in a ratio that is inverse to a town's wealth, the wealthier towns in the Region One school district receive substantially less money per student under the ECS formula than Canaan and North Canaan, which, for the 2002–2003 fiscal year, received $967 and $3250 per student, respectively.[10]

The plaintiff testified on her own behalf. After placing copies of her tax records into evidence, the plaintiff also sought to introduce into evidence several exhibits, which she had prepared herself, purporting to demonstrate, by way of various charts and graphs, the inequities of § 10-51 (b) as alleged in her complaint. The trial court, however, sustained the defendants' objection to those exhibits.[11] Although the trial court explained to the plaintiff that she could testify on the subject matter of the proposed exhibits and, if necessary, use those exhibits for the limited purpose of refreshing her recollection, the plaintiff tendered no such testimony. With respect to how she had been injured by § 10-51 (b), the plaintiff testified as follows: "The taxpayers in my town pay for services. The regional district is one pool of resources to pay for regional high school education services. Currently, the six member towns are assessed per student capita per town. There is no assessment per taxpayers within the entire region and the entire

---

[10] For the 2002–2003 fiscal year, Cornwall received ECS money totaling $200 per student, Kent received $269 per student, Salisbury received $217 per student and Sharon received $238 per student.

[11] The defendants objected to the exhibits on hearsay grounds and because the plaintiff had not been qualified as an expert. The plaintiff has not appealed from the trial court's ruling excluding her proffered exhibits.

pool of resources. That's unequal. It's unfair and so taxpayers in my town can pay four, five, six times as much as a similarly situated taxpayer in another regional member town including the town of Salisbury, which is a coin's toss across the Housatonic River. It's unfair." The plaintiff concluded her case without calling any other witnesses.

The trial court thereafter dismissed the plaintiff's action on the ground that she lacked standing to bring the action. In its memorandum of decision, the trial court observed that the plaintiff had introduced no evidence to substantiate her testimony that Canaan taxpayers can pay significantly more than similarly situated taxpayers in other regional member towns or that her taxes otherwise have increased by virtue of the cost allocation formula of § 10-51 (b). The trial court further noted that the plaintiff's unsupported contention was "clearly refute[d]" by Elliott's testimony. The trial court also concluded that the defendants "clearly [had] established [that] the benefit of the ECS . . . offset[s] any claimed taxpayer harm."

On appeal,[12] the plaintiff contends that the trial court's conclusions were clearly erroneous. The plaintiff maintains that, had the trial court performed the mathematical calculations set forth in the brief that she has filed with this court—calculations which she claims are based upon data gleaned from the attorney general's exhibits—the trial court necessarily would have reached a different conclusion.[13] The plaintiff also con-

---

[12] At oral argument, we were informed that Joyce Schurk no longer is a taxpayer in the town of Canaan, one of six towns comprising the Region One school district. See footnote 5 of this opinion. Because prospective relief was the only relief sought and because Schurk no longer pays taxes in the Region One school district, she lacks standing to pursue this appeal.

[13] Specifically, the plaintiff claims that the trial court should have deducted the ECS money received by each member town from the "per-student high school cost allocations charged by Region One to each member town," thereby yielding the "net cost per high school student . . . ." According to the plaintiff, the trial court then should have divided "the equalized net

tends that the trial court improperly credited Elliott's testimony that the plaintiff's property taxes would be approximately the same or more in the other Region One towns. The plaintiff further argues that because real property is not a fungible commodity that can be moved from place to place, she could not buy comparable property in the other towns for the price that she had paid for her property in Canaan. Finally, the plaintiff claims that the trial court should have recognized, on the basis of Elliott's testimony regarding what the assessed value of the plaintiff's property would be in the other Region One district towns in comparison to what its assessed value actually is in Canaan, that Canaan property owners have suffered long-term, pecuniary injury from § 10-51 (b) in the form of "depressed property values."

The defendants first maintain that the trial court's conclusion that the plaintiff lacks standing is fully supported by the record. The defendants next contend that the plaintiff's claims violate basic precepts of appellate advocacy because they are predicated on a fact-based theory of pecuniary harm that was not raised in the trial court. Specifically, the defendants assert that, on appeal, the plaintiff "engage[s] in multiple calculations of numerical figures extracted from certain selected exhibits, and offer[s] as evidence the resulting figures." The defendants further assert that, "[n]ot only were

grand list figures . . . into the adjusted net cost per student," and then multiplied the quotient by 100,000. This, the plaintiff argues, would have yielded the "[t]ax [p]ayable per $100,000 of [e]qualized [a]ssessment."

Additionally, the plaintiff claims that the trial court "failed to recognize that [Elliott's] analysis of total real property taxes never broke out the portion of those taxes [that goes to pay] Region One high school costs." The plaintiff contends that, "had [Elliott] made such calculations, she would necessarily have concluded that the tax rates for Region One high school costs—even using the theoretical increased property values projected in her calculations—would still produce an unequal and unfair tax burden on [the plaintiff], resulting in substantial pecuniary injury . . . ."

none of these calculations, the resulting figures, or the supposed reasoning behind them presented to the trial court for review and challenge, they were never the subject of testimony under oath by a competent witness, subject to proper cross-examination." Alternatively, the defendants contend that, even if we were to consider and to credit the plaintiff's arguments on appeal, she has not established pecuniary harm of a magnitude sufficient to afford her standing to bring this action.[14] We agree with the defendants' contentions.

"In *Sadloski* [v. *Manchester*, 235 Conn. 637, 668 A.2d 1314 (1995)], we reaffirmed the basic tenets of taxpayer standing. The plaintiff's status as a taxpayer does not automatically give her standing to challenge alleged improprieties in the conduct of the defendant town. . . . The plaintiff must also allege and demonstrate that the allegedly improper municipal conduct cause[d her] to suffer some pecuniary or other great injury. . . . It is not enough for the plaintiff to show that her tax dollars have contributed to the challenged project . . . . [T]he plaintiff must prove that the project has directly or indirectly increased her taxes . . . or, in some other fashion, caused her irreparable injury in her capacity as a taxpayer. . . . [B]ecause standing is a practical concept, common sense suggests that a taxpayer who challenges a part of a particular governmental program must demonstrate his or her injury in the entire fiscal context of that program, taking into account both the burdens and benefits of the program, and not just by demonstrating that the presumably burdensome part of the program itself, divorced from the larger program of which it is a part, causes injury." (Citations omitted; internal quotation marks omitted.)

---

[14] For example, the defendants claim that, even pursuant to the plaintiff's calculations, the actual difference between what taxpayers in Canaan pay and what taxpayers in Salisbury pay is negligible, amounting to just $13.46 per year on properties assessed at $200,000.

*Seymour* v. *Region One Board of Education*, supra, 261 Conn. 489–90. "If a party is found to lack standing, the court is without subject matter jurisdiction to determine the cause." (Internal quotation marks omitted.) *Fort Trumbull Conservancy, LLC* v. *Alves*, 262 Conn. 480, 485, 815 A.2d 1188 (2003). Because standing implicates the court's subject matter jurisdiction, the plaintiff ultimately bears the burden of establishing standing. See *Fink* v. *Golenbock*, 238 Conn. 183, 199 n.13, 680 A.2d 1243 (1996). Furthermore, "[a] trial court's determination that it lacks subject matter jurisdiction because of a plaintiff's lack of standing is a conclusion of law that is subject to plenary review on appeal. . . . We conduct that plenary review, however, in light of the trial court's findings of fact, which we will not overturn unless they are clearly erroneous." (Citation omitted.) *Connecticut Associated Builders & Contractors* v. *Anson*, 251 Conn. 202, 209, 740 A.2d 804 (1999). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Sargent* v. *Smith*, 272 Conn. 722, 728–29, 865 A.2d 1129 (2004).

On the basis of the record before us, we cannot conclude that the trial court's essential factual findings—that the plaintiff paid approximately the same or less in property taxes as similarly situated taxpayers in other Region One school district towns, and that the benefits of the ECS money offset whatever difference there possibly might be in those property taxes—were clearly erroneous. On the contrary, the trial court's findings were amply supported by the testimony of Elliott and Brewer. Furthermore, the plaintiff failed to adduce any evidence demonstrating that she had suffered the kind of injury that is a precondition to maintaining her tax-

payer challenge to the constitutionality of § 10-51 (b). Instead, the plaintiff attempts, for the first time on appeal, to introduce a mathematical formula that allegedly supports her theory of pecuniary harm. This formula, however, never was presented to the trial court. The plaintiff similarly failed to adduce any evidence to support her argument that § 10-51 (b) effectively has depressed property values in Canaan. As we repeatedly have observed, "[i]t is the function of the trial court, not this court, to find facts. . . . [T]o review [a] claim, which has been articulated for the first time on appeal and not before the trial court, would result in a trial by ambuscade of the trial judge." (Citation omitted; internal quotation marks omitted.) *Simmons* v. *Simmons*, 244 Conn. 158, 187, 708 A.2d 949 (1998). We therefore reject the plaintiff's contention that the trial court was required to conclude that the plaintiff has standing to pursue this action.

The judgment is affirmed.

In this opinion the other justices concurred.