# SUSAN F. COGSWELL, INSURANCE COMMISSIONER
## *v.* AMERICAN TRANSIT INSURANCE COMPANY
### (SC 17547)

Borden, Norcott, Katz, Palmer and Zarella, Js.

Argued October 27, 2006—officially released May 22, 2007

*Daniel J. Krisch*, with whom were *Wesley W. Horton* and, on the brief, *Jay H. Sandak, Brendon P. Levesque*, and *Ronald Crawley*, legal intern, for the appellant (defendant).

*William J. Prensky*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the appellee (plaintiff).

*Opinion*

KATZ, J. The defendant, American Transit Insurance Company, a New York based and licensed livery insurance company, appeals[1] from the summary judgment of the trial court rendered in favor of the plaintiff, Susan F. Cogswell, the insurance commissioner of the state of Connecticut. In this enforcement action, the plaintiff seeks to compel the defendant's compliance with a subpoena she had issued pursuant to her investigative powers as insurance commissioner under General Statutes § 38a-16.[2] On appeal, the defendant claims that the

---

[1] The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c).

[2] General Statutes § 38a-16 (a) provides: "The Insurance Commissioner or his authorized representative may, as often as he deems necessary, conduct investigations and hearings in aid of any investigation on any matter under the provisions of this title. Pursuant to any such investigation or hearing, the commissioner or his authorized representative may issue subpoenas, administer oaths, compel testimony, order the production of books, records,

trial court improperly concluded that it had personal jurisdiction over the defendant and improperly rendered summary judgment in favor of the plaintiff because disputed issues of fact remain concerning the extent of the defendant's activities in Connecticut to support jurisdiction as well as the burdensomeness of the subpoena. We conclude that the exercise of jurisdiction in the present case would violate due process. Accordingly, the trial court lacked jurisdiction over the defendant and, therefore, we reverse the judgment.

The facts of this case are largely undisputed. The present conflict arose after one of the defendant's insureds, a livery driver, was involved in a traffic accident with Mickey Reavis, a Connecticut resident, on a Connecticut highway. After receiving a claim from Reavis, the defendant arranged for a Connecticut licensed appraiser to inspect Reavis' car and to provide an estimate of damages. The defendant then mailed a letter to Reavis in Connecticut containing an itemized damage estimate and an offer to settle his claim. Thereafter, Reavis and a representative of the defendant spoke on the telephone to discuss his claim. Although the identity of the person to whom Reavis spoke as well as the content of that conversation are subject to debate by the parties, it is undisputed that Reavis was dissatisfied with the result of his communication with the defendant and thereafter filed a complaint with the Connecticut department of insurance.

In response to and after a preliminary investigation of Reavis' complaint, the plaintiff initiated an investigation of the defendant. In the course of her investigation,

papers and documents, and examine books and records. If any person refuses to allow the examination of books and records, to appear, to testify or to produce any book, record, paper or document when so ordered, a judge of the Superior Court, upon application of the commissioner or his authorized representative, may make such order as may be appropriate to aid in the enforcement of this section."

the plaintiff determined that neither the defendant nor its internal claims adjusters are licensed to do insurance business in Connecticut.[3] The plaintiff also obtained information that the appraisal company that had evaluated Reavis' vehicle allegedly had performed other appraisals in Connecticut for the defendant. On October 9, 2003, the plaintiff served the defendant with an investigative subpoena, via the Connecticut secretary of the state, under the long arm jurisdiction conferred by General Statutes § 38a-273.[4] The subpoena directed the defendant to produce specified documents from the period of January 1, 1998, through October 9, 2003, that the plaintiff considered relevant to her investigation into insurance practices by the defendant for claims arising in Connecticut.

---

[3] Casualty claims adjusters are required to be licensed by the plaintiff in order to adjust claims in Connecticut under General Statutes § 38a-792 (a), which provides in relevant part: "No person may act as an adjuster of casualty claims for any insurance company or firm or corporation engaged in the adjustment of casualty claims unless such person has first secured a license from the commissioner, and has paid the license fee specified in section 38a-11, for each two-year period or fraction thereof. Application for such license shall be made as provided in section 38a-769. The commissioner may waive the requirement for examination in the case of any applicant for a casualty claims adjuster's license who is a nonresident of this state and who holds an equivalent license from any other state. . . ."

[4] General Statutes § 38a-273 (a) provides in relevant part: "Any act of doing an insurance business, as set forth in subsection (a) of section 38a-271, by any unauthorized person or insurer is equivalent to and shall constitute an irrevocable appointment by such person or insurer, binding upon him, his executor, administrator, or personal representative, or successor in interest if a corporation, of the Secretary of the State to be the true and lawful attorney of such person or insurer upon whom may be served all legal process in any action or proceeding in any court by the commissioner or by the state and upon whom may be served any notice, order, pleading or process in any proceeding before the commissioner and which arises out of doing an insurance business in this state by such person or insurer. Any such act of doing an insurance business by any unauthorized person or insurer shall be signification of its agreement that any such legal process in such court action or proceeding and any such notice, order, pleading or process in such administrative proceeding before the commissioner so served shall be of the same legal force and validity as personal service of process in this state upon such person or insurer . . . ."

On October 31, 2003, pursuant to § 38a-8-65 of the Regulations of Connecticut State Agencies,[5] the defendant mailed a letter to the plaintiff to contest the jurisdiction of the state department of insurance over the defendant, claiming that it is a New York insurance company that neither solicits nor transacts business in Connecticut and requesting a hearing on the issue of jurisdiction. In a letter dated November 21, 2003, the plaintiff responded that she had the authority to issue the investigative subpoena and directed the defendant to comply with the terms of the subpoena by November 28, 2003.

After the defendant failed to comply, on February 23, 2004, the plaintiff instituted this action for an order to enforce the subpoena pursuant to § 38a-16 (a). See footnote 2 of this opinion. On March 29, 2004, the defendant filed a motion to dismiss the action for lack of personal jurisdiction and a motion to quash the investigative subpoena. After oral argument on the motion to dismiss, on August 6, 2004, the trial court, *Beach, J.*, issued a memorandum of decision denying the motion. In its memorandum of decision, the trial court found the following undisputed facts. The defendant is licensed and has its principal place of business in New York. It has no places of business or property in Connecticut, and it does not market or solicit business in Connecticut or insure any Connecticut residents. The trial court additionally determined that the insurance contract underlying the transactions at issue was not executed in Connecticut.

The trial court further noted that the parties were in agreement that the defendant's actions were " 'unauthorized' in the sense that it [had] not obtained [an insur-

---

[5] Section 38a-8-65 of the Regulations of Connecticut State Agencies provides: "Objections to the jurisdiction of the Insurance Department may be made to the Commissioner at any time prior to the final decision."

ance] license in Connecticut." The court determined that the defendant's interaction with Reavis, including at least one letter the defendant had sent to Connecticut from New York and one telephone call the defendant had made from New York to Connecticut, constituted an act of "doing an insurance business" under General Statutes § 38a-271 (a),[6] thereby bringing the defendant under the state's jurisdiction pursuant to the long arm statute, § 38a-273 (a), which specifies that "[a]ny act of doing an insurance business, as set forth in subsection (a) of section 38a-271, by any unauthorized person or insurer" shall confer personal jurisdiction over such party. See footnote 4 of this opinion. The trial court further concluded that the plaintiff's exercise of jurisdiction in the present case did not contravene the constitutional requirements of due process. Thus, the trial court denied the defendant's motion to dismiss for lack of personal jurisdiction.

Thereafter, the defendant filed an answer to the plaintiff's enforcement action and asserted nine special defenses. The special defenses relevant to the present controversy alleged, inter alia, that: (1) the plaintiff had

---

[6] General Statutes § 38a-271 (a) provides in relevant part: "Any of the following acts effected in this state by mail or otherwise is defined to be doing an insurance business in this state . . . (6) directly or indirectly acting as an agent for or otherwise representing or aiding on behalf of another any person or insurer in the solicitation, negotiation, procurement or effectuation of insurance or renewals thereof or in the dissemination of information as to coverage or rates, or forwarding of applications, or delivery of policies or contracts, or inspection of risks, a filing of rates or investigation or adjustment of claims or losses or in the transaction of matters subsequent to effectuation of the contract and arising out of it, or in any other manner representing or assisting a person or insurer in the transaction of insurance with respect to subjects of insurance resident, located or to be performed in this state . . . (7) the doing of or proposing to do any insurance business in substance equivalent to any of the foregoing in a manner designed to evade the provisions of the general statutes relating to insurance; and (8) any other transactions of business in this state by an insurer. The venue of an act committed by mail is at the point where the matter transmitted by mail is delivered and takes effect."

no authority to serve process on the secretary of the state as the defendant's agent because the defendant did not conduct insurance business under § 38a-271 (a) as required to allow service of process under § 38a-273 (a); (2) to the extent that the subpoena was duly served pursuant to § 38a-273 (a), the defendant did not conduct insurance business under § 38a-271 (a) as is required for process under § 38a-273 (a); (3) the plaintiff's action was barred by the doctrine of unclean hands because she had not granted the defendant's request for a hearing pursuant to § 38a-8-65 of the regulations; and (4) the subpoena was overly broad, would cause undue hardship to the defendant and was unlikely to yield information within the jurisdictional scope of the plaintiff. The plaintiff filed a motion to strike these four special defenses, and, on February 28, 2005, the trial court, *Hennessey, J.*, issued an order, granting the motion in part, striking the first two special defenses on the ground that they already had been decided by Judge Beach in his decision denying the defendant's motion to dismiss, and concluding that the third special defense was premature.[7] The court did not address the fourth special defense regarding the burdensomeness of the subpoena.

Thereafter, the plaintiff filed a motion for summary judgment on her application to enforce the investigative subpoena, claiming that there remained no genuine issue of material fact and that she was entitled to judgment as a matter of law. On July 18, 2005, after oral argument at which the parties debated extensively the

---

[7] The plaintiff asserted in support of her motion to strike the unclean hands special defense that the authorization under § 38a-8-65 of the regulations to raise an objection to the department of insurance's jurisdiction pursuant to a hearing applies only to enforcement proceedings after a formal charge has been brought, and not to investigations or the issuance of investigative subpoenas. Thus, the plaintiff claimed that the defendant could not challenge the plaintiff's jurisdiction under this provision unless and until the plaintiff initiates a formal proceeding against the defendant.

burdensomeness of the subpoena and whether the issue of burdensomeness was a factual or legal matter, the trial court, *Hennessey, J.*, granted the motion and rendered judgment for the plaintiff. Although the defendant's motion to quash the subpoena had raised the issue of personal jurisdiction as well as the burdensomeness of the subpoena, the trial court did not reexamine personal jurisdiction, because the parties agreed that Judge Beach's decision on that issue in deciding the motion to dismiss was the law of the case.[8] This appeal followed. Additional facts will be set forth as necessary.

In its appeal to this court, the defendant makes two claims. First, the defendant claims that the trial court improperly denied its motion to dismiss because the court improperly had concluded that the plaintiff and the court had personal jurisdiction over the defendant. Second, the defendant contends that the trial court improperly granted the plaintiff's motion for summary judgment because a dispute remains over issues of material fact regarding the extent of the defendant's activities in Connecticut to support jurisdiction and the burdensomeness of the investigative subpoena. We conclude that the trial court lacked personal jurisdic-

---

[8] We note that neither Judge Beach nor Judge Hennessey ruled on the defendant's motion to quash the subpoena. Judge Beach addressed the motion to quash in a footnote to his decision denying the defendant's motion to dismiss, stating: "The parties have also contested the ability of the [plaintiff] to submit the 'investigative subpoena.' It would appear at first glance that if personal jurisdiction exists in relation to the action to enforce the subpoena, then the statutory scheme would support the issuance of the investigative subpoena. If the parties wish to present arguments on the secondary issue, please notify civil caseflow." The parties have not, however, pursued this motion. At the oral argument on her motion for summary judgment, the plaintiff informed the court that the motion to quash had been scheduled for argument four times in the sixteen months since it had been filed, but never claimed by the defendant. The defendant did not refute this claim, but explained that it had been pursuing other aspects of the case, chiefly the jurisdictional issue.

tion over the defendant, and, therefore, it was improper for the court to render summary judgment for the plaintiff. Accordingly, the case must be dismissed.[9]

We begin with the defendant's claim that the trial court, *Beach, J.*, improperly denied its motion to dismiss because the court improperly had decided that the plaintiff and, in turn the court, had personal jurisdiction over the defendant. The defendant's claim is twofold: first, the plaintiff lacks jurisdiction under the long arm statute, § 38a-273; and second, the defendant lacks the constitutionally mandated minimum contacts with the state sufficient to permit the plaintiff to exercise personal jurisdiction. We note that Judge Hennessey's decisions, granting in part the plaintiff's motion to strike the special defenses related to personal jurisdiction and granting the plaintiff's motion for summary judgment, were predicated on her adoption of Judge Beach's decision denying the motion to dismiss for lack of personal jurisdiction as the law of the case.[10] Thus, it is Judge Beach's decision to which we turn to analyze the defendant's jurisdictional claims.

In analyzing personal jurisdiction, we are mindful of certain well settled principles. When a defendant challenges personal jurisdiction in a motion to dismiss, the court must undertake a two part inquiry to determine the propriety of its exercising such jurisdiction over the defendant. "The trial court must first decide whether the applicable state long-arm statute authorizes the assertion of jurisdiction over the [defendant].

---

[9] Because we resolve this case on jurisdictional grounds, we do not reach the issue of the burdensomeness of the subpoena.

[10] At oral argument on the plaintiff's motion for summary judgment, the plaintiff reminded Judge Hennessey that she already had decided that Judge Beach's decision on the jurisdictional issue was the law of the case. The defendant twice concurred that Judge Beach's decision was the law of the case, and instead focused on the issue of the burdensomeness of the subpoena.

If the statutory requirements [are] met, its second obligation [is] then to decide whether the exercise of jurisdiction over the [defendant] would violate constitutional principles of due process." (Internal quotation marks omitted.) *Knipple* v. *Viking Communications, Ltd.*, 236 Conn. 602, 606, 674 A.2d 426 (1996); see also *Thomason* v. *Chemical Bank*, 234 Conn. 281, 286, 661 A.2d 595 (1995); *Frazer* v. *McGowan*, 198 Conn. 243, 246, 502 A.2d 905 (1986). Thus, based on the facts in the record, this court must determine: first, whether § 38a-273 properly applies to the defendant; and, second, if the statutory threshold is met, whether the defendant has the requisite minimum contacts with this state sufficient to satisfy constitutional due process concerns.

As a general matter, the burden is placed on the defendant to disprove personal jurisdiction. " 'The general rule putting the burden of proof on the defendant as to jurisdictional issues raised is based on the presumption of the truth of the matters stated in the officer's return. When jurisdiction is based on personal or abode service, the matters stated in the return, if true, confer jurisdiction. When jurisdiction is based on constructive service, jurisdiction cannot arise solely from the acts recited in the return. . . .' 1 [E. Stephenson, Connecticut Civil Procedure (2d Ed. 1970)] § 96, p. 390." *Standard Tallow Corp.* v. *Jowdy*, 190 Conn. 48, 53, 459 A.2d 503 (1983). "When a motion to dismiss for lack of personal jurisdiction raises a factual question which is not determinable from the face of the record, the burden of proof is on the plaintiff to present evidence which will establish jurisdiction." Id., 54. If the defendant challenging the court's personal jurisdiction is a foreign corporation or a nonresident individual, it is the plaintiff's burden to prove the court's jurisdiction. *Knipple* v. *Viking Communications, Ltd.*, supra, 236 Conn. 607. Thus, once the defendant contested personal jurisdic-

tion in the present case, it was the plaintiff's burden to produce evidence adequate to establish such jurisdiction.

The standard of review for a court's decision on a motion to dismiss is well settled. "A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the court's ultimate legal conclusion and resulting [determination] of the motion to dismiss will be de novo. . . . When a . . . court decides a jurisdictional question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Internal quotation marks omitted.) *Cox* v. *Aiken*, 278 Conn. 204, 211, 897 A.2d 71 (2006). "The motion to dismiss . . . admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone. . . . Where, however, as here, the motion is accompanied by supporting affidavits containing undisputed facts, the court may look to their content for determination of the jurisdictional issue . . . ." (Internal quotation marks omitted.) *Ferreira* v. *Pringle*, 255 Conn. 330, 346–47, 766 A.2d 400 (2001); see also *Knipple* v. *Viking Communications, Ltd.*, supra, 236 Conn. 608 (noting that "this court has previously considered the undisputed factual allegations in the complaint as well as the undisputed factual allegations in the various affidavits when adjudicating the motion [to dismiss] where no evidentiary hearing has been held"). With these guidelines in mind, we address the statutory and constitutional questions in turn.

I

"It is axiomatic that courts do not engage in constitutional analysis if a nonconstitutional basis upon which

to resolve an issue exists." *Shelton* v. *Statewide Grievance Committee*, 277 Conn. 99, 107, 890 A.2d 104 (2006). Therefore, we begin by examining the defendant's statutory claim to determine whether we may resolve the jurisdictional issue without addressing the constitutional issue. See *State* v. *McCahill*, 261 Conn. 492, 501, 811 A.2d 667 (2002).

A

As we previously have noted, it is the plaintiff's burden to prove that the long arm statute provides a basis on which she, and in turn the trial court, may exercise personal jurisdiction over the defendant. We begin our analysis by examining the court's conclusion that § 38a-271 (a) (6) provided a statutory basis for jurisdiction founded on the defendant's actions in the present case, and we conclude that the trial court properly determined that the defendant was subject to personal jurisdiction under §§ 38a-271 (a) (6) and 38a-273 (a).

The question of whether the defendant's actions fall within long arm jurisdiction pursuant to § 38a-271 (a) presents an issue of statutory construction over which our review is plenary. *Lostritto* v. *Community Action Agency of New Haven, Inc.*, 269 Conn. 10, 18, 848 A.2d 418 (2004); see also *Sargent* v. *Capital Airlines, Inc.*, 96 Conn. App. 320, 322, 901 A.2d 55 (2006) ("A challenge to the jurisdiction of the court presents a question of law. . . . Our review of the court's legal conclusion is, therefore, plenary."). In our consideration of this claim, we are guided by the well settled rules of statutory analysis. "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning,

General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *State* v. *Bletsch*, 281 Conn. 5, 16, 912 A.2d 992 (2007). "Furthermore, we presume that laws are enacted in view of existing relevant statutes . . . and that [s]tatutes are to be interpreted with regard to other relevant statutes because the legislature is presumed to have created a consistent body of law." (Internal quotation marks omitted.) *State* v. *Cardwell*, 246 Conn. 721, 738–39, 718 A.2d 954 (1998).

We turn to the general provision under § 38a-271 (a), which provides in relevant part: "Any of the following acts effected in this state by mail or otherwise is defined to be doing an insurance business in this state . . . (6) directly or indirectly acting as an agent for or otherwise representing or aiding on behalf of another any person or insurer in the . . . investigation or adjustment of claims or losses or in the transaction of matters subsequent to effectuation of the contract and arising out of it, or in any other manner representing or assisting a person or insurer in the transaction of insurance with respect to subjects of insurance resident, located or to be performed in this state. . . . The venue of an act committed by mail is at the point where the matter transmitted by mail is delivered and takes effect." This general provision of the long arm statute works in tan-

dem with the service of process provision under § 38a-273 (a), which provides in relevant part: "Any act of doing an insurance business, as set forth in subsection (a) of section 38a-271, by any unauthorized person or insurer is equivalent to and shall constitute an irrevocable appointment by such person or insurer . . . of the Secretary of the State to be the true and lawful attorney of such person or insurer upon whom may be served all legal process in any action or proceeding in any court by the commissioner or by the state and upon whom may be served any notice, order, pleading or process in any proceeding before the commissioner and which arises out of doing an insurance business in this state by such person or insurer. . . ." See footnote 4 of this opinion. Thus, given the statutes' repeated references to "any" act or "an act" of doing insurance business, the legislature has made clear that one unauthorized act of doing insurance business will satisfy the statutory requirement for the long arm jurisdiction of the plaintiff.

As we have discussed previously, the trial court noted that it was undisputed that the defendant had mailed a letter to Reavis in Connecticut containing an estimate of damage and an offer to settle his claim. We agree with the trial court's conclusion that such an action constituted an act of "directly or indirectly acting as an agent for or otherwise representing . . . any person . . . in the . . . adjustment of claims . . . in [the] state" under § 38a-271 (a) (6). Accordingly, the trial court properly determined that the plaintiff had satisfied her burden to establish a statutory basis for long arm jurisdiction pursuant to § 38a-273.

### B

The defendant, nonetheless, claims that the long arm statute does not reach its conduct in the present case, because its actions fell under an exception to the long

arm statute in § 38a-271 (b)[11] for certain transactions involving out-of-state insurance policies. Because it raises this statutory exception for the first time on appeal to this court, the defendant seeks to prevail under the plain error doctrine. See *Stoni* v. *Wasicki*, 179 Conn. 372, 377, 426 A.2d 774 (1979) (concluding that failure of trial court to apply pertinent statute constituted plain error even though neither party raised statutory issue); see also *State* v. *Preyer*, 198 Conn. 190, 199, 502 A.2d 858 (1985) (charge demonstrating that trial court overlooked applicable statute constituted plain error). The defendant relies on the following exception: "The provisions of sections 38a-271 to 38a-278, inclusive, other than section 38a-277, do not apply to . . . (3) transactions, in this state, involving a policy lawfully solicited, written and delivered outside of this state covering only subjects of insurance not resident, located or expressly to be performed in this state at the time of issuance, and which transactions are subsequent to the issuance of such policy . . . ." General Statutes § 38a-271 (b). In addition to her argument challenging our ability to review the defendant's claim because the defendant has raised the claim for the first time on appeal and has not provided an adequate record under which to evaluate it, the plaintiff contends that the defendant's conduct is not excluded under § 38a-271 (b) (3). The plaintiff contends that the defendant's reading of the statute, deeming the adjustment of claims as a type of excluded "transaction," renders the specific inclusion of adjustment of claims as an "act" of "doing an insurance business" virtually meaningless and yields

---

[11] General Statutes § 38a-271 (b) provides in relevant part: "The provisions of sections 38a-271 to 38a-278, inclusive, other than section 38a-277, do not apply to . . . (3) transactions, in this state, involving a policy lawfully solicited, written and delivered outside of this state covering only subjects of insurance not resident, located or expressly to be performed in this state at the time of issuance, and which transactions are subsequent to the issuance of such policy . . . ."

an unworkable result in which the plaintiff is deprived of its regulatory power. Noting that claims adjustment and transaction are listed as separate categories of "acts" in § 38a-271 (a), the plaintiff claims that the terms "act" and "transaction" must therefore have two separate and distinct meanings, pointing to our rule of statutory construction that "[t]he use of . . . different terms . . . within the same statute suggests that the legislature acted with complete awareness of their different meanings . . . and that it intended the terms to have different meanings . . . ." (Internal quotation marks omitted.) *Hasselt* v. *Lufthansa German Airlines*, 262 Conn. 416, 426, 815 A.2d 94 (2003). We conclude that, even if we were to assume, without deciding, that the legal predicate for the defendant's claim is correct, namely, that adjustment of claims may constitute a type of "transaction" exempted in this section,[12] the factual predicate cannot be established in order for the defendant to prevail under the plain error doctrine, as the record is insufficient to evaluate this claim. Thus, the defendant's claim must fail.

"[T]he plain error doctrine, which is now codified at Practice Book § 60-5 . . . is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court

---

[12] We note that, although neither party cited this provision in its brief, General Statutes § 38a-276, to which the exception under § 38a-271 (b) expressly applies and which addresses claims adjustments, appears to lend support to the defendant's construction of claims adjustment as a type of "transaction" excluded under § 38a-271 (b). General Statutes § 38a-276 provides: "Every person investigating or adjusting any loss or claim on a subject of insurance in this state shall immediately report to the commissioner every insurance policy or contract which has been entered into by any insurer not authorized to transact such insurance in this state. *This section does not apply to transactions in this state involving a policy lawfully solicited, written and delivered outside of this state covering only subjects of insurance not resident, located or expressly to be performed in this state at the time of issuance, and which transactions are subsequent to the issuance of such policy.*" (Emphasis added.)

ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of policy. . . . In addition, the plain error doctrine is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . Plain error is a doctrine that should be invoked sparingly. . . . A party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice. . . . Implicit in this very demanding standard is the notion, explained previously, that invocation of the plain error doctrine is reserved for occasions requiring the reversal of the judgment under review. . . . [Thus, a] defendant cannot prevail under [the plain error doctrine] . . . unless he demonstrates that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice." (Citation omitted; internal quotation marks omitted.) *State* v. *Fagan*, 280 Conn. 69, 86–87, 905 A.2d 1101 (2006), cert. denied, 549 U.S. 1269, 127 S. Ct. 1491, 167 L. Ed. 2d 236 (2007).

It is well established, however, that invocation of the plain error doctrine is appropriate when the issue is one of statutory construction, does not require further fact-finding and does not prejudice either party. *Collins* v. *Colonial Penn Ins. Co.*, 257 Conn. 718, 727–28 n.14, 778 A.2d 899 (2001). In order to determine whether the policy at issue meets the factual prerequisites to satisfy the exception, the record must reflect undisputed evidence as to those factors, namely, that the policy "cover[s] only subjects of insurance not resident, located or expressly to be performed in this state at the time of issuance . . . ." General Statutes § 38a-271 (b) (3). The policy at issue, however, is not in the record, and thus there is no factual basis to determine whether the exception applies to it. We do not know, for example,

the geographical extent of the coverage in the policy, nor the "subjects of insurance" covered. Moreover, proper evaluation of the defendant's plain error claim would require this court to make factual findings as to these elements of the policy, something we do not do. *Seymour* v. *Region One Board of Education*, 274 Conn. 92, 105, 874 A.2d 742, cert. denied, 546 U.S. 1016, 126 S. Ct. 659, 163 L. Ed. 2d 526 (2005). Accordingly, the defendant cannot prevail on its claim under the exacting standard mandated by the plain error doctrine.

## II

Because the defendant cannot prevail on its statutory claim, we turn now to its constitutional claim. The defendant contends that the trial court improperly concluded that the defendant's contacts with Connecticut were sufficient to subject it to the long arm jurisdiction of this state. We agree with the defendant.

As articulated in the seminal case of *International Shoe Co.* v. *Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945), the constitutional due process standard requires that, "in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." (Internal quotation marks omitted.) In other words, "[t]he [d]ue [p]rocess [c]lause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations. . . . By requiring that individuals have fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign . . . the [d]ue [p]rocess [c]lause gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance

as to where that conduct will and will not render them liable to suit . . . ." (Citations omitted; internal quotation marks omitted.) *Burger King Corp.* v. *Rudzewicz*, 471 U.S. 462, 471–72, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985). "The due process test for personal jurisdiction has two related components: the 'minimum contacts' inquiry and the 'reasonableness' inquiry. The court must first determine whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction. See [*International Shoe Co.* v. *Washington*, supra, 316]." *Metropolitan Life Ins. Co.* v. *Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996).

For the purposes of this initial inquiry, the Supreme Court of the United States has articulated, and this court has recognized, two types of personal jurisdiction. "Either specific jurisdiction or general jurisdiction can satisfy the constitutional requirement of sufficient minimum contacts between the defendant and the forum. A state court will have specific jurisdiction over a nonresident defendant whenever the defendant has purposefully directed [its] activities at residents of the forum, *Keeton* v. *Hustler Magazine, Inc.*, 465 U.S. 770, 774 [104 S. Ct. 1473, 79 L. Ed. 2d 790] (1984), and the litigation [has] result[ed] from alleged injuries that *arise out of* or relate to those activities, *Helicopteros Nacionales de Colombia, S. A.* v. *Hall*, [466 U.S. 408, 414, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984)]. . . . *Burger King Corp.* v. *Rudzewicz*, [supra, 471 U.S. 472–73]. Alternatively, [e]ven when the cause of action does *not arise out of* or relate to the foreign corporation's activities in the forum [s]tate, due process is not offended by a [s]tate's subjecting the corporation to its in personam jurisdiction if the defendant has had continuous and systematic general business contacts with the state. . . . *Helicopteros Nacionales de Colombia, S. A.* v. *Hall*, supra, 414, 416." (Emphasis in original; internal quotation marks omitted.) *Thomason* v. *Chemical*

*Bank,* supra, 234 Conn. 287–88. Whether a given defendant has contacts with the forum state sufficient to satisfy due process is dependent upon the facts of the particular case. "Like any standard that requires a determination of reasonableness, the minimum contacts test of *International Shoe Co.* is not susceptible of mechanical application; rather the facts of each case must be weighed to determine whether the requisite affiliating circumstances are present." (Internal quotation marks omitted.) *Kulko* v. *Superior Court of California,* 436 U.S. 84, 92, 98 S. Ct. 1690, 56 L. Ed. 2d 132 (1978).

Due process demands more, however, than the existence of minimum contacts between the defendant and the forum state. Once minimum contacts have been established, "[t]he second stage of the due process inquiry asks whether the assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice'—that is, whether it is reasonable under the circumstances of the particular case. See [*International Shoe Co.* v. *Washington,* supra, 326 U.S. 316]. . . . [Therefore] [w]hile the exercise of jurisdiction is favored where the plaintiff has made a threshold showing of minimum contacts at the first stage of the inquiry, it may be defeated where the defendant presents 'a compelling case that the presence of some other considerations would render jurisdiction unreasonable.' [*Burger King Corp.* v. *Rudzewicz,* supra, 471 U.S. 477]." (Citations omitted.) *Metropolitan Life Ins. Co.* v. *Robertson-Ceco Corp.,* supra, 84 F.3d 568. With these guidelines in mind, we examine the facts of the present case.

The record reveals the following additional facts relevant to this issue. In its motion to dismiss for lack of personal jurisdiction, the defendant had claimed, inter alia, that the plaintiff lacked jurisdiction over it because, even if the defendant had transacted insurance business under § 38a-271 (a) and thus was subject to long arm

jurisdiction under § 38a-273, the statutory reach of the long arm statute exceeded the minimum contacts threshold for constitutional due process. In support of its motion, the defendant submitted an affidavit from Edward T. McGettingan, Sr., the defendant's president, in which he made a number of undisputed assertions. Specifically, McGettingan affirmed that, in response to notification of Reavis' claim, the defendant had retained the services of a Connecticut licensed appraiser to inspect the damage and that, when Reavis contacted the defendant thereafter, the parties had failed to negotiate a settlement. McGettingan further affirmed that the defendant's employees in New York who had responded to Reavis' claim were not Connecticut licensed adjusters. McGettingan stated that the defendant is licensed by the state of New York to conduct insurance business and never has been licensed, maintained offices, employed workers or owned property in Connecticut. McGettingan further attested that the defendant does not solicit, underwrite or issue insurance policies to Connecticut residents or Connecticut corporations.

In her memorandum of law in opposition to the defendant's motion to dismiss, the plaintiff alleged that she had personal jurisdiction over the defendant under her broad statutory authority to investigate whether unlicensed individuals had adjusted casualty claims in this state on behalf of the defendant, thereby transacting unauthorized insurance business. The plaintiff claimed that her investigation was predicated on evidence that the defendant had used two unlicensed casualty adjusters to adjust Reavis' claim in Connecticut. The plaintiff further alleged that, in the course of her investigation, she had learned that Property Damage Appraisers, the Connecticut licensed appraisal company hired by the defendant to evaluate Reavis' claim, had appraised twenty-one other claims for the defendant in the state

of Connecticut.[13] In support of these assertions, the plaintiff submitted the affidavit of Janet A. Logozzo, an employee of the plaintiff who conducted the investigation of the defendant for the department of insurance.

Logozzo attested to the following facts. Reavis' complaint indicated that the defendant had mailed a settlement offer to his home in Connecticut and that a claims adjuster from the defendant's New York office had called Reavis in Connecticut. Srimavo Armogan, the defendant's employee who had mailed the settlement letter to Reavis, a copy of which was appended to the affidavit, was not licensed as a claims adjuster in Connecticut. Sam Petrocelli, the defendant's employee who had attempted to adjust and settle Reavis' claim in the telephone conversation, was not licensed as a claims adjuster in Connecticut.[14] Finally, William Schroeder of Property Damage Appraisers, the Connecticut licensed appraiser hired by the defendant to appraise Reavis' claim, had provided Logozzo with a list of twenty-one appraisals that his company had performed for the defendant during the period from August, 2002, through May, 2003.[15]

In its memorandum of decision denying the defendant's motion to dismiss, after observing that only a

[13] The plaintiff claims that, although the defendant's act of hiring a Connecticut licensed appraiser to evaluate its Connecticut claims was in conformity with the insurance statutes, any subsequent adjustment of a properly appraised claim by an unlicensed adjuster, as occurred in the case of Reavis' claim, would be a violation of § 38a-271 (a).

[14] Although Logozzo's attestations regarding Armogan are undisputed, the defendant submitted an affidavit from Petrocelli in which Petrocelli denied that he had spoken to Reavis or attempted to settle or adjust Reavis' claim, and affirmed that his job with the defendant consisted solely of sending claims to appraisers for preparation of damage estimates and reviewing those estimates. Petrocelli attested that, accordingly, he had reviewed Reavis' claim, sent it to the Connecticut appraiser and subsequently had reviewed the estimate, but never had had contact with Reavis personally.

[15] The defendant's challenge to this assertion is addressed later in this opinion in connection with the plaintiff's general jurisdiction claim.

single act of doing insurance business was required to invoke the long arm statute, the trial court noted its findings that the defendant had mailed at least one claim adjustment letter and had made at least one telephone call to Connecticut,[16] and determined that it was "quite clear that [the performance of these actions] in the context of attempting to resolve a claim fall within the broad definitions of § 38a-271 (a)." Turning to the constitutional issue, the court determined that, "[b]ecause of the purposeful communications in this case, I believe that it was reasonably foreseeable that the [defendant] would be 'haled into court' in Connecticut, especially in the context of the highly regulated insurance business." The court also noted Connecticut's strong policy interest in regulating the fair handling of claims and ensuring just insurance practices within its borders. The court concluded: "It would seem to be quite obvious that the deliberate calling and mailing, presumably knowing where and to whom the contacts were being made, constitutes the sort of 'specific' contact which negates any sense of unfairness or inability to anticipate 'being haled into court.' Although the accident in Connecticut may be somewhat random and general jurisdiction perhaps may be lacking because insufficient business is conducted, intentionally or otherwise, in Connecticut, it is nonetheless perfectly fore-

---

[16] As we have mentioned previously, although the defendant does not dispute that it mailed a letter to Reavis, it contests which party initiated the subsequent telephone call, as well as the details of that conversation. The defendant claims these facts are material because the court's subpoena enforcement power is permissive and discretionary under § 38a-16. See footnote 2 of this opinion. Thus the defendant contends that further factual inquiry into this telephone conversation may have persuaded the court as to the proper extent to which it should have enforced or limited the subpoena. For the purposes of our determination regarding personal jurisdiction, however, we assume without deciding that the trial court properly found that the defendant had initiated this telephone conversation with Reavis, and we conclude that the circumstances related to this conversation are irrelevant.

seeable that a New York insured would have an accident with a Connecticut resident, and the [defendant's] contact with the resident in this instance was a purposeful attempt to resolve a claim. The circumstances in which the contacts occurred do not militate against the exercise of jurisdiction."

In its appeal to this court, the defendant claims that its purely responsive communications to those Reavis had initiated did not give rise to specific jurisdiction, and that the exercise of jurisdiction based on a single incident in Connecticut would offend "traditional notions of fair play and substantial justice." (Internal quotation marks omitted.) *International Shoe Co.* v. *Washington*, supra, 326 U.S. 316. The defendant further claims that it does not have contacts with Connecticut that are adequately systematic and continuous so as to confer general jurisdiction.

We begin with the threshold question of whether the defendant has sufficient minimum contacts with the state of Connecticut. As we have discussed, in support of its determination that the exercise of personal jurisdiction was proper, the trial court determined that there was specific jurisdiction because it was "perfectly foreseeable that a New York insured would have an accident with a Connecticut resident, and the contact with the resident in this instance was a purposeful attempt to resolve a claim." We disagree with the trial court's interpretation of the foreseeability component of the due process requirement in the context of the present case. The United States Supreme Court has noted that, "the foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp.* v. *Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490

(1980). "In defining when it is that a potential defendant should 'reasonably anticipate' out-of-state litigation, the [Supreme] Court frequently has drawn from the reasoning of *Hanson* v. *Denckla*, 357 U.S. 235, 253 [78 S. Ct. 1228, 2 L. Ed. 2d 1283] (1958): 'The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts . . . or of the 'unilateral activity of another party or a third person' . . . ." (Citations omitted.) *Burger King Corp.* v. *Rudzewicz*, supra, 471 U.S. 474–75.

The purposeful availment required to satisfy due process concerns is absent in the present case. The only acts that the defendant directed at this state were in response to Reavis' filing a claim with the defendant. Although the trial court found the defendant's conduct to be purposeful because of its "deliberate calling and mailing, presumably knowing where and to whom the contacts were being made," the evidence indicates that the defendant knew whom to call and where to address its letter precisely because these acts were in response to the claim that Reavis had filed with the defendant in New York. As the United States Supreme Court has explained, however, in order for personal jurisdiction to lie, the *defendant* must create the significant connection with the forum state; see id., 475 ("[j]urisdiction is proper . . . where the contacts proximately result from actions by the defendant *himself* that create a

'substantial connection' with the forum [s]tate" [emphasis in original]). There was no evidence before the trial court that, before receiving the claim from Reavis, the defendant had engaged in any behavior so as to invoke the benefits and privileges of Connecticut law. It did not solicit business, maintain offices, own property or otherwise seek to conduct its insurance business in Connecticut. The mere fact that the defendant insures livery drivers in a state that borders Connecticut does not mean that it should anticipate being haled into court in this state when it does not purposefully direct any business activity here.

Other courts considering the propriety of exercising jurisdiction founded on solely responsive conduct derived from a single incident in the forum state likewise have determined that such contacts are insufficient in and of themselves to establish jurisdiction. In *Hunt* v. *Erie Ins. Group*, 728 F.2d 1244, 1245–46 (9th Cir. 1984), the Ninth Circuit Court of Appeals rejected the plaintiff's claim that the defendant insurance company's initial mailing and subsequent termination of payments to a party in California who, while in Colorado, had been injured in an accident as a passenger in an automobile insured by the defendant established the minimum contacts required by due process. The court explained, "[w]e cannot agree that the requisite minimum contacts are established because a plaintiff's move into a state requires the defendant to send communications into that forum." Id., 1248. Similarly, in *Batton* v. *Tennessee Farmers Mutual Ins. Co.*, 153 Ariz. 268, 269–70, 736 P.2d 2 (1987), the Arizona Supreme Court upheld the dismissal for lack of personal jurisdiction of a lawsuit by an insured of the defendant who, while a resident of Tennessee, was injured in an automobile accident in Arizona. The insurance company had mailed correspondence to the plaintiff's attorney in Arizona, but "[had] no offices or agents in Arizona,

[was] not licensed to do business in Arizona, and, aside from [the plaintiff's] claim, [had] never investigated, adjusted, settled, or defended a claim in Arizona." Id., 270. The court held that "[the defendant's] correspondence with [the plaintiff's] Arizona attorney, even if tortious or actionable as a breach of contract, [was] not a 'purposeful' contact *with Arizona.* . . . [T]he requisite minimum contacts are not established when the *plaintiff's action* requires the defendant to send communications into th[e] forum. The mere fact that [the defendant] responded to [the plaintiff's] Arizona lawyers, and may have committed a tort against [the plaintiff] in the process, is not evidence that [the defendant] purposefully availed itself of the privilege of conducting business in Arizona." (Emphasis in original; internal quotation marks omitted.) Id., 274; see also *Tennessee Farmers Mutual Ins. Co.* v. *Harris*, 833 S.W.2d 850, 852 (Ky. App. 1992) (no long arm jurisdiction in Kentucky court over appellant insurance company when: all parties involved were Tennessee residents; insurance policy sued upon had been written and delivered in Tennessee; appellant did not provide coverage in Kentucky, had not sought or been granted a certificate of authority to do business in Kentucky; and only contact appellant had with Kentucky occurred after insureds' accident when appellant's adjuster went to Kentucky to obtain police report, look at insured vehicle and arrange for salvage company to retrieve vehicle after settling collision claim). Accordingly, we conclude that the defendant's limited, responsive contact with Reavis was insufficient to establish specific jurisdiction in accordance with the mandates of due process.

The plaintiff claims, however, that she is nevertheless entitled to summary judgment because she has demonstrated a foundation for general jurisdiction as an alter-

native basis to satisfy due process in the present case.[17] Specifically, the plaintiff points to the affidavit from Logozzo, originally submitted in opposition to the defendant's motion to dismiss and before the trial court in the summary judgment motion, wherein Logozzo attested: "Upon request, Property Damage Appraisers [the Connecticut appraisal company that appraised Reavis' claim] provided me with a list of [twenty-one] appraisals it performed in Connecticut for [the defendant] for the period [of] August, 2002, through May, 2003." The plaintiff claims that this court properly may exercise jurisdiction on the basis of these twenty-one additional claims adjustments because they establish that the defendant had the requisite " 'continuous and systematic general business contacts' with the state." *Thomason* v. *Chemical Bank,* supra, 234 Conn. 290. We conclude that the plaintiff has not met her burden of proving general jurisdiction.

In reviewing the legal basis for summary judgment, this court properly may consider facts contained in the affidavits submitted in support of, or in opposition to, the motion. See Practice Book § 17-49 ("judgment sought shall be rendered forthwith if the pleadings,

[17] Although the plaintiff did not file a formal request for this court to consider general jurisdiction as an alternate ground for affirmance pursuant to Practice Book § 63-4 (a) (1) (A), we address this claim in the interest of diligence and because the issue of general jurisdiction has been contested throughout the course of litigation in this case and was analyzed in both parties' briefs to this court. Accordingly, the defendant is not prejudiced by our consideration of this issue. See *State* v. *Cruz,* 269 Conn. 97, 99 n.2, 107, 848 A.2d 445 (2004) ("[a]lthough the state failed to present its claim as an alternate ground for affirmance . . . we have refused to consider an issue not contained in a preliminary statement of issues only in cases in which the opposing party would be prejudiced by consideration of the issue" [internal quotation marks omitted]); see also *Connecticut Ins. Guaranty Assn.* v. *Fontaine,* 278 Conn. 779, 794, 900 A.2d 18 (2006) (although defendant failed to raise issue as alternate ground for affirmance, court may consider it because doing so will not prejudice plaintiff, which had discussed issue extensively in its brief).

affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law"); *Reardon* v. *Windswept Farm, LLC*, 280 Conn. 153, 158, 905 A.2d 1156 (2006) (same); see also *Barde* v. *Board of Trustees*, 207 Conn. 59, 62, 539 A.2d 1000 (1988) (when motion to dismiss is accompanied by supporting affidavits containing undisputed allegations of fact, court may look to their content to determine whether jurisdiction is proper). In order to give effect to the facts alleged therein, however, those affidavits must "be made on personal knowledge . . . set forth such facts as would be admissible in evidence, and . . . show affirmatively that the affiant is competent to testify to the matters stated therein." Practice Book § 17-46. In the present case, Logozzo had no personal knowledge that the Connecticut appraisal company in fact performed the additional twenty-one appraisals for the defendant. The list provided to her by the appraiser who had evaluated Reavis' claim does not provide a sufficient basis on which she could testify to the fact that twenty-one additional adjustments actually were performed on behalf of the defendant. Moreover, the defendant contested the admissibility of these allegations on hearsay grounds in its opposition to summary judgment, and the plaintiff failed to offer further evidence or argument as to either a nonhearsay basis or hearsay exception under which these allegations properly could be admitted. Accordingly, we may not consider the allegations contained in Logozzo's affidavit as established facts for the purpose of ascertaining the constitutional basis for general jurisdiction. Thus, there is insufficient evidence in the record to support the allegation that the defendant had an ongoing business relationship with this state sufficient to confer a basis for general jurisdiction.

Finally, because the plaintiff has failed to prove that the defendant has the requisite minimum contacts with

Connecticut, we need not consider whether the exercise of personal jurisdiction would be reasonable in the present case. Accordingly, we conclude that the plaintiff has not met her burden of establishing the prerequisites necessary to satisfy due process for the exercise of long arm jurisdiction over the defendant. Because the exercise of personal jurisdiction is not constitutionally proper, and because the opposition to summary judgment was based, inter alia, on the defendant's objection to personal jurisdiction, the case must be dismissed.

The judgment is reversed and the case is remanded with direction to dismiss the plaintiff's action.

In this opinion the other justices concurred.