LAKE ROAD TRUST LTD. ET AL. *v.* ABB
POWERTECH (PTY) LTD. ET AL.
(AC 33585)

DiPentima, C. J., and Gruendel and Robinson, Js.

Argued March 15—officially released July 10, 2012

*Paul V. Esposito*, pro hac vice, with whom were *Derek E. Donnelly* and, on the brief, *Edward M. Kay*, pro hac vice, *Alexander X. Saunders*, pro hac vice, and *Stuart G. Blackburn*, for the appellants (plaintiffs).

*Robert G. Clemente*, with whom, on the brief, was *David A. Post*, for the appellees (defendant Nynas Naphthenics, AB et al.).

*Opinion*

ROBINSON, J. The plaintiffs, Lake Road Trust Ltd. and Lake Road Generating Company Limited Partnership, appeal from the judgment of the trial court dismissing for lack of personal jurisdiction those counts of their product liability complaint directed at the defendants Nynas Naphthenics, AB (Naphthenics), and Nynas AB,[1] and from the court's subsequent denial of the plaintiffs' motion to reargue the judgment of dismissal. The plaintiffs claim on appeal that the court improperly granted the defendants' motions to dismiss and denied the motion to reargue without first giving

---

[1] This opinion will refer to Naphthenics and Nynas AB collectively as the defendants. Additional counts of the complaint remain pending against the defendants ABB Powertech (Pty) Ltd. and Powertech Transformers (Pty) Ltd. but they are not parties to the present appeal.

the plaintiffs an opportunity to obtain jurisdictional discovery from the defendants and without conducting an evidentiary hearing in accordance with our Supreme Court's decision in *Standard Tallow Corp.* v. *Jowdy*, 190 Conn. 48, 459 A.2d 503 (1983). We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our review. The plaintiffs own and operate an electrical power generating plant (power plant) located in the Dayville section of Killingly. The power plant consists of three turbine generators that use three generator step-up transformers to alter the current produced by the turbines for connection to an electrical substation. The electricity generated by the power plant is sold through the ISO New England market.

In May, 2005, the power plant was shut down by an electrical arcing event in one of the transformers. An investigation revealed that the event was caused in part by contaminated oil in the transformer. A similar event occurred in another transformer at the plaintiffs' power plant in February, 2007, which, again, was attributed in part to contaminated transformer oil. The transformer oil used in the transformers was supplied by Naphthenics, which was located and incorporated in Sweden. In January, 2008, Naphthenics merged into its parent company, AB Nynas Petroleum, which, in March, 2008, changed its name to Nynas AB.

In February, 2010, the plaintiffs commenced this product liability action. Count four of the complaint alleges that there were defects in the transformer oil supplied by Naphthenics and that Naphthenics is liable to the plaintiffs under General Statutes § 52-572m for damages to their property caused by the defective oil. Count five of the complaint alleges that Nynas AB, as the successor in interest of Naphthenics, is liable for

the acts and/or omissions of Naphthenics and for any resulting property damage.

On April 7, 2010, Naphthenics and Nynas AB each filed a motion to dismiss. Both of the motions to dismiss were accompanied by an affidavit from an employee of Nynas AB who attested that she was familiar with the business dealings of the defendants. Each defendant argued that the sole count against it should be dismissed for lack of personal jurisdiction because it had insufficient contacts with Connecticut to satisfy General Statutes § 33-929 (f) or constitutional principles of due process and because the plaintiffs failed to comply with the service of process requirements of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, November 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638, 658 U.N.T.S. 163 (Hague Convention), and § 33-929 (b). Naphthenics also argued that the court lacked personal jurisdiction over it because it no longer existed as a legal entity.

The plaintiffs filed motions asking to extend the time in which to reply to the motions to dismiss to June 7, 2010, which were granted by the court. On June 7, 2010, the plaintiffs filed a motion seeking to further postpone argument on the motions to dismiss for six months so that the plaintiffs could "conduct jurisdictional discovery to develop the facts necessary to support their [o]bjection to the [m]otions to [d]ismiss." The defendants filed an opposition to that motion, which was overruled by the court on July 26, 2010.

On July 15, 2010, the plaintiffs issued interrogatories to the defendants, directed, in part, at establishing the extent of the defendants' contacts with Connecticut. The defendants filed objections to the interrogatories on August 16, 2010. The case was transferred to the complex litigation docket in November, 2010, at which

time the plaintiffs filed a motion to compel the defendants to respond to their discovery requests. The court issued an order denying the motion to compel without prejudice on January 3, 2011. According to the court, the motion to compel failed to mention that the defendants had filed objections to the plaintiffs' discovery requests and, although the motion indicated that a judge had ordered compliance at a status conference, the plaintiffs had failed to attach a copy of such an order to their motion to compel. The court also noted that the motion to compel was not accompanied by an affidavit indicating that the plaintiffs had made a good faith effort to resolve the objections in accordance with Practice Book §§ 13-8 (b) and 13-10 (c).

On January 11, 2011, the defendants filed requests for adjudication of their pending motions to dismiss, indicating that the motions had gone unopposed for nearly nine months. The court issued an order on January 25, 2011, that it would hold a hearing concerning the motions to dismiss on February 10, 2011, and that any opposition by the plaintiffs should be filed by February 4, 2011. The plaintiffs filed their oppositions to the motions to dismiss on February 1, 2011, to which they attached affidavits and other exhibits. In their oppositions, the plaintiffs indicated to the court that the defendants had refused to provide any discovery regarding jurisdiction and service, and, therefore, if the court concluded that factual issues remained in dispute regarding the jurisdictional and service issues, the court should afford them an opportunity to conduct discovery and hold a *Standard Tallow Corp.* hearing.

After hearing argument on the motions to dismiss, the court issued a memorandum of decision granting the motions on the ground that the court lacked personal jurisdiction over the defendants. Specifically, the court found that the undisputed facts showed "that Naphthenics supplied the [transformer] oil in question; that it

made a sale to a Connecticut company in 2002; and, as of 2004, it distributed its products throughout the United States, with a smaller amount sent to a New Jersey depot to serve the northeastern United States." On the basis of those facts, the court determined that the applicable long arm statute, § 33-929 (f) (3), would have authorized the assertion of jurisdiction over Naphthenics and, therefore, also reached Nynas AB as its successor in interest. The court also determined, however, that, "since Naphthenics' separate existence ceased, it may not be sued here, and the court lacks personal jurisdiction over it."

Having found that it was statutorily authorized to exercise jurisdiction over Nynas AB, the court proceeded to analyze whether such exercise of jurisdiction would violate constitutional principles of due process.[2] The court first determined that it lacked specific jurisdiction because the transformers at issue in the lawsuit were manufactured in 2000 and the only contacts between Naphthenics and Connecticut occurred in 2002. Accordingly, the court determined that "[t]he necessary causal connection between Naphthenics' contacts with Connecticut and the plaintiffs' cause of action [had] not been shown." Finally, the court determined that it lacked general jurisdiction over Nynas AB because the single sale to a Connecticut company and the existence of the depot in New Jersey to serve the northeastern United States did not establish "continuous and systematic general business contacts" with the

---

[2] "When a defendant challenges personal jurisdiction in a motion to dismiss, the court must undertake a two part inquiry to determine the propriety of its exercising such jurisdiction over the defendant. The trial court must first decide whether the applicable state long-arm statute authorizes the assertion of jurisdiction over the [defendant]. If the statutory requirements [are] met, its second obligation [is] then to decide whether the exercise of jurisdiction over the [defendant] would violate constitutional principles of due process." (Internal quotation marks omitted.) *Cogswell* v. *American Transit Ins. Co.*, 282 Conn. 505, 514–15, 923 A.2d 638 (2007).

state. (Internal quotation marks omitted.) *Cogswell* v. *American Transit Ins. Co.*, 282 Conn. 505, 524, 923 A.2d 638 (2007).

In its memorandum, the court also addressed the jurisdictional discovery issue raised by the plaintiffs. It concluded that no additional discovery or an evidentiary hearing was needed because there were no disputed factual issues relevant to the court's adjudication of the issue of personal jurisdiction. The court also noted that the plaintiffs previously had sought time to conduct jurisdictional discovery, but "did not diligently pursue it" and, therefore, were "not entitled to another opportunity to conduct jurisdictional discovery." The plaintiffs filed a motion to reargue, which the court denied. This appeal followed.

"The standard of review for a court's decision on a motion to dismiss is well settled. A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the court's ultimate legal conclusion and resulting [determination] of the motion to dismiss will be de novo. . . . When a . . . court decides a jurisdictional question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . The motion to dismiss . . . admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone." (Internal quotation marks omitted.) *Gold* v. *Rowland*, 296 Conn. 186, 200–201, 994 A.2d 106 (2010).

"When a motion to dismiss for lack of personal jurisdiction raises a factual question which is not determinable from the face of the record, the burden of proof is

on the plaintiff to present evidence which will establish jurisdiction." *Standard Tallow Corp.* v. *Jowdy*, supra, 190 Conn. 54. "[A] determination of whether sufficient minimum contacts with Connecticut exist is a fact question. . . . A motion to dismiss may . . . raise issues of fact and would, therefore, require a . . . hearing [to determine the facts]. . . . [A]ffidavits are insufficient to determine the facts unless, like the summary judgment, they disclose that no genuine issue as to a material fact exists. . . . When issues of fact are necessary to the determination of a court's jurisdiction, due process requires that a trial-like hearing be held, in which an opportunity is provided to present evidence and to cross-examine adverse witnesses." (Citations omitted; internal quotation marks omitted.) Id., 56.

Our Supreme Court has "long recognized that the granting or denial of a discovery request rests in the sound discretion of the [trial] court, and is subject to reversal only if such an order constitutes an abuse of that discretion. . . . [I]t is only in rare instances that the trial court's decision will be disturbed." (Internal quotation marks omitted.) *Blumenthal* v. *Kimber Mfg., Inc.*, 265 Conn. 1, 7, 826 A.2d 1088 (2003). When, however, the trial court recognizes that a factual presentation is necessary, it is an abuse of discretion for the court to deny an opportunity for discovery. *Standard Tallow Corp.* v. *Jowdy*, supra, 190 Conn. 60. "The standard of review for a court's denial of a motion to reargue also is abuse of discretion." *Housing Authority* v. *Goodwin*, 108 Conn. App. 500, 506 n.10, 949 A.2d 494 (2008).

On appeal, the plaintiffs claim that the court improperly granted the defendants' motions to dismiss and denied the plaintiffs' motion to reargue without allowing the plaintiffs an opportunity to obtain jurisdictional discovery from the defendants and without conducting an evidentiary hearing in accordance with *Standard Tallow Corp.* v. *Jowdy*, supra, 190 Conn. 48.

Under the circumstances of the present case, we do not agree that the court abused its discretion by refusing to allow the plaintiffs additional time for jurisdictional discovery or by failing to conduct an evidentiary hearing prior to ruling on the motions to dismiss.

In *Standard Tallow Corp.*, shortly after one of the defendants filed a motion to dismiss claiming a lack of personal jurisdiction, the plaintiff filed a motion to postpone any hearing on the motion to dismiss until that defendant complied with discovery requests that the plaintiff indicated it intended to file and that were necessary to elicit facts from which personal jurisdiction could be shown. Id., 50. The defendant objected to the motion to postpone. Id. During argument on those motions, the trial court denied the plaintiff's request for a trial-like hearing and also denied the motion to postpone. Id. The court then immediately heard argument on the motion to dismiss; id., 55; and later issued a decision granting the motion. Id., 50. On appeal, our Supreme Court determined that the court's actions effectively had denied the plaintiff any opportunity to conduct discovery "on an issue which the court clearly recognized as requiring a resolution of contested fact." Id., 57. Our Supreme Court reversed the trial court's judgment of dismissal, concluding that, because the court should have recognized that a factual presentation was necessary to resolve the personal jurisdiction issue, the court erred by not holding an evidentiary hearing and by denying the plaintiff an opportunity for discovery. Id., 60.

We are not persuaded that the present case falls squarely within the holding of *Standard Tallow Corp.* Unlike in *Standard Tallow Corp.*, the court here did not deny the plaintiffs an opportunity to conduct discovery prior to ruling on the motions to dismiss. The motions to dismiss were filed in April, 2010. The court initially granted the plaintiffs a two month extension of time in

which to respond to the motions. There is nothing in the record to indicate that the plaintiffs attempted to conduct discovery during that period; rather, on the final day of the extension period, the plaintiffs filed a motion seeking to postpone the court's consideration of the motions to dismiss for an additional six months to allow them time to conduct jurisdictional discovery. The defendants objected to the motion to postpone. The court never issued an express ruling on the motion to postpone, but the court overruled the defendants' objection on July 26, 2010, effectively granting the extension. In contrast, the court in *Standard Tallow Corp.* not only denied the plaintiff's motion for extension, but immediately proceeded to hear argument on the motion to dismiss. The plaintiffs in the present case received the extra time they sought to conduct discovery and to respond to the motions to dismiss. In fact, the court did not order the plaintiffs to file a response to the defendants' motions to dismiss or hold a hearing on those motions until February, 2011, in effect giving the plaintiffs two additional months in which to resolve their discovery issues.

Not only were the plaintiffs afforded an opportunity to conduct discovery, the plaintiffs actually served interrogatories on the defendants in July, 2010. The plaintiffs nevertheless claim that the defendants engaged in a "strategy of nondisclosure" and that it was improper for the court to have imposed "an arbitrary time limit on the discovery process," citing the Supreme Court's decision in *Ramin* v. *Ramin*, 281 Conn. 324, 915 A.2d 790 (2007).

In *Ramin*, the court held that it was an abuse of discretion for the trial court to force the plaintiff to proceed to trial without completing discovery and to refuse to consider the plaintiff's pretrial motion for contempt and sanctions against the defendant for failure to comply with the plaintiff's discovery requests.

Id., 340–43. Our Supreme Court reasoned that the trial court's decision improperly rewarded the defendant, who it found had abused the discovery process by not responding to the plaintiff's discovery requests and by ignoring numerous orders of the court mandating compliance, and that it was the defendant's abuse of the discovery process that was responsible for the lengthy delay in getting the case ready for trial. Id.

In the present case, the record reveals that the defendants properly objected to the plaintiffs' interrogatories and request for production and, based on their objections, refused to provide responses to the plaintiffs' discovery requests. The plaintiffs failed to avail themselves of judicial intervention as provided for in Practice Book § 13-14 until November, 2010, at which time the plaintiffs filed a motion to compel compliance. The court determined, however, that the motion to compel failed to comply with our rules of practice, and it denied the motion without prejudice. The plaintiffs never attempted to refile a compliant motion to compel. Unlike in *Ramin*, in which the defendant had failed to abide by multiple court orders to comply with the plaintiff's discovery requests, the plaintiffs in the present case never obtained any order from the trial court overruling the defendants' objections and compelling the defendants to comply with their discovery requests. The record does not support an argument that it was the defendants' abuse of the discovery process that prevented the plaintiffs from obtaining discovery in the present case. Accordingly, the *Ramin* decision is inapposite to our review of the court's decision not to allow the plaintiffs additional time to conduct discovery.

Further, nothing in the *Standard Tallow Corp.* decision imposes a duty on the court to intervene on behalf of a plaintiff having difficulty obtaining jurisdictional discovery; it only requires that the plaintiff be given an opportunity to conduct such discovery and to hold an

evidentiary hearing if the court determines that issues of disputed fact exist regarding jurisdiction. Ultimately, the court determined that the relevant facts necessary for it to rule on the defendants' motions to dismiss were not in dispute and, therefore, no additional discovery by the plaintiffs was necessary to ensure due process. "The trial court has a responsibility to avoid unnecessary interruptions, to maintain the orderly procedure of the court docket, and to prevent any interference with the fair administration of justice. . . . In addition, matters involving judicial economy, docket management [and control of] courtroom proceedings . . . are particularly within the province of a trial court." (Internal quotation marks omitted.) *West Haven Lumber Co.* v. *Sentry Construction Corp.*, 117 Conn. App. 465, 469, 979 A.2d 591, cert. denied, 294 Conn. 919, 984 A.2d 70 (2009). When, as in the present case, a plaintiff has had a meaningful opportunity to conduct discovery, but has failed effectively to take advantage of that opportunity, and there has been no determination by the court that a factual dispute exists, we cannot conclude that, by adjudicating the motions to dismiss on the basis of the record before it, the court has abused its considerable discretion over discovery matters, in managing its docket and in ensuring the due administration of justice as to all parties involved.

Other than their argument that they should have been provided with additional time to conduct jurisdictional discovery, the plaintiffs have not raised any claims of error directly challenging the legal or factual bases of the court's decision on the motions to dismiss or the motion to reargue. Accordingly, we need not address the merits of those decisions.

The judgment is affirmed.

In this opinion the other judges concurred.