******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

CHEVY CHASE BANK, F.S.B. *v.* VLADIMIR AVIDON
(AC 36873)

Sheldon, Prescott and Flynn, Js.

*Argued October 8—officially released December 22, 2015*

(Appeal from Superior Court, judicial district of Fairfield, Hartmere, J. [motion to open; motion to dismiss]; Tyma, J. [judgment of foreclosure by sale].)

*David Eric Ross*, for the appellant (named defendant).

*Joseph J. Cherico*, for the appellee (substitute plaintiff).

*Opinion*

FLYNN, J. The defendant Vladimir Avidon[1] appeals from the trial court's judgment of foreclosure by sale entered on May 5, 2014, in favor of the substituted plaintiff, Capital One, N.A. (Capital One).[2] The defendant claims that the trial court improperly (1) denied the defendant's motion to dismiss for lack of standing, (2) denied the defendant's motion to open the default for failure to plead, and (3) struck the defendant's answer with special defenses. We disagree and affirm the judgment of the trial court.

We conclude that the court properly found that on July 13, 2009, there was both standing and jurisdiction to commence this foreclosure matter brought in the name of Chevy Chase Bank, F.S.B. (Chevy Chase), because its acquisition by Capital One, according to the certificate of merger in evidence, was not effective until July 30, 2009, approximately two weeks after the action had been commenced. We further conclude that the court did not abuse its discretion by denying the defendant's motion to open the default and striking the defendant's answer with special defenses.

The following facts are relevant to the defendant's appeal. On July 13, 2009, Chevy Chase commenced this action to foreclose its mortgage on real property located at 10 and 20 Abbey Road in Easton and Monroe. The defendant had executed an adjustable rate note, dated October 24, 2005, in favor of Chevy Chase in the original principal amount of $1,311,260, which was secured by an open-end mortgage deed on the premises.[3] The return date in this action was August 4, 2009. The defendant subsequently filed an appearance on his own behalf, then on September 21, 2009, a foreclosure mediation request; however, he failed to plead in response to the complaint at that time. For that reason, on October 15, 2009, Chevy Chase filed a motion for default for failure to plead, which was granted by the clerk on November 17, 2009. Chevy Chase also filed a motion for judgment of strict foreclosure on October 15, 2009.

On January 22, 2010, two months after the default was entered, Chevy Chase, without objection, filed a motion to cite in as a party defendant Webster Bank, N.A. (Webster) because Webster had an interest in the matter by virtue of being a subsequent encumbrancer on the premises. Also on January 22, 2010, Chevy Chase requested leave to amend its complaint to add a new paragraph containing allegations detailing Webster Bank's interest in the premises. The court granted the motion to cite in on February 27, 2010. On April 21, 2010, Chevy Chase again requested leave to amend its complaint in order to change the legal description of the premises because of a release of a portion of the premises from the mortgage. There was no objection to the second request for leave to amend, and, subse-

quently, Chevy Chase filed an updated motion for judgment of strict foreclosure on May 26, 2010.

The defendant had been self-represented up until June 14, 2010, when counsel filed an appearance on his behalf. That same day, the defendant's counsel also filed a motion for extension of time to plead,[4] a foreclosure mediation request, and a motion to modify the foreclosure mediation period. On June 15, 2010, the defendant's counsel filed a motion to open the default for failure to plead, which was denied almost five months later by order dated November 3, 2010. Then, on November 22, 2010, the defendant filed a motion to dismiss, arguing that Chevy Chase did not have standing because it was merged into and acquired by Capital One on or about February 27, 2009, prior to the commencement of this action, and, therefore, was not the holder of the mortgage and note at the time this action was commenced. The defendant's motion was based upon information and belief, supported by newspaper articles published on December 4, 2008, stating that Capital One intended to purchase Chevy Chase, as well as a Wikipedia[5] entry for Chevy Chase indicating that Capital One completed its acquisition of Chevy Chase on February 27, 2009.

Chevy Chase objected to the motion to dismiss on January 20, 2011, explaining that it was not merged into Capital One until July 30, 2009. Judge Hartmere held an evidentiary hearing regarding the motion to dismiss on September 1, 2011, during which both the defendant and Charity Benson, an officer and employee of Capital One, testified. Benson was a vice president of mortgage lending for Capital One. Among the exhibits admitted at the hearing were a group of documents that included a "Certificate of Merger" issued by the Comptroller of the Currency evidencing the conversion of Chevy Chase to a national bank and the merger of Chevy Chase into Capital One, both effective July 30, 2009; and a letter dated July 15, 2009, sent jointly by Chevy Chase and Capital One to the defendant stating that the parent company of Capital One acquired Chevy Chase earlier in the year and that, effective July 30, 2009, Capital One would become the servicer of the loan evidenced by the note. The July 15, 2009 letter was entitled "Notice of Transfer of Servicing Rights" and provided, inter alia, that "Capital One Financial Corporation, the parent company of [Capital One] acquired [Chevy Chase] earlier this year. As a result, effective July 30, 2009, the servicer of your mortgage is changing from [Chevy Chase] . . . to [Capital One]."

During the hearing, the defendant testified that, prior to receiving the July 15, 2009 letter, when he engaged in or received communications regarding the mortgage loan, he was told that Capital One, not Chevy Chase, was handling his loan. Following the evidentiary hearing on September 1, 2011, the court denied the defendant's

motion to dismiss. The court found that "the controlling date of the merger . . . is that contained on the certificate of merger issued by the Comptroller of the Currency that is effective as of July 30, 2009," which it found "was the date that [Chevy Chase] was merged into Capital One." The court further found that Chevy Chase "met its burden of proving that it was the holder of the note at the time this action was commenced." Chevy Chase then filed a motion to substitute Capital One as the plaintiff in this action on November 4, 2011, which was later granted on November 21, 2011.

Over one year later, on February 4, 2013, the defendant filed a motion for extension of time, seeking to postpone a hearing on the plaintiff's motion for judgment of strict foreclosure for sixty days in order to obtain his own appraisal. That same day, the court granted the motion and allowed the defendant until March 30, 2013, to submit his own appraisal. On April 19, 2013, forty-five months after this action had been commenced, by service of process occurring July 13, 2009, the defendant filed an answer with three special defenses. The defendant's answer to the complaint admitted only that the defendant was the owner of the premises and the equity of redemption. The defendant either denied or claimed insufficient knowledge leaving the plaintiff to its proof on all other allegations, including the allegation that the defendant had executed the subject mortgage in the principal amount of $1,311,260. The first two special defenses asserted that the plaintiff lacked standing and was not the owner or holder of the note at the time the action was commenced. In his third special defense, the defendant alleged that the plaintiff "failed to comply with the conditions precedent under the subject mortgage and/or note necessary to accelerate any alleged debt, commence and/or maintain this action."

Also on April 19, 2013, the defendant filed an objection to the pending motion for judgment of strict foreclosure, maintaining that judgment could not be entered given the recently filed answer. Consequently, by order dated April 22, 2013, the court again marked off the motion for judgment of strict foreclosure. On May 10, 2013, Capital One filed an objection to the defendant's attempt to set aside the prior default for failure to plead and to file the answer with special defenses. Also on May 10, 2013, the defendant filed a brief supporting the filing of his answer with special defenses. By order dated May 17, 2013, the court, *Tyma, J.*, held that the defendant's answer with special defenses was untimely filed and, therefore, the answer with special defenses was stricken. The court (*Tyma, J.*) ultimately entered a judgment of foreclosure by sale on May 5, 2014, with the sale date scheduled for September 13, 2014. However, on May 23, 2014, the defendant filed this appeal.

I

We first address the defendant's claim regarding lack of standing, as this claim presents a question of the trial court's subject matter jurisdiction. See *Castro* v. *Viera*, 207 Conn. 420, 429, 541 A.2d 1216 (1988) ("once the question of lack of jurisdiction of a court is raised, [it] must be disposed of no matter in what form it is presented . . . and the court must fully resolve it before proceeding further with the case" [citations omitted; internal quotation marks omitted]). The defendant claims that Chevy Chase did not have standing to bring the foreclosure action because it did not own or hold the note at the time the action was commenced. We disagree.

"A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Stepney Pond Estates, Ltd.* v. *Monroe*, 260 Conn. 406, 417, 797 A.2d 494 (2002). "We conduct that plenary review, however, in light of the trial court's findings of fact, which we will not overturn unless they are clearly erroneous." (Internal quotation marks omitted.) *Seymour* v. *Region One Board of Education*, 274 Conn. 92, 104, 874 A.2d 742, cert. denied, 546 U.S. 1016, 125 S. Ct. 659, 163 L. Ed. 2d 526 (2005).

We begin by noting some of the governing principles in reviewing whether Chevy Chase had legal standing to bring this foreclosure action. "Standing is established by showing that the party claiming it is authorized by statute to bring an action, in other words statutorily aggrieved, or is classically aggrieved. . . . The fundamental test for determining [classical] aggrievement encompasses a well-settled twofold determination: [F]irst, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in [the challenged action], as distinguished from a general interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the [challenged action]. . . . Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." (Internal quotation marks omitted.) *Wesley* v. *Schaller Subaru, Inc.*, 277 Conn. 526, 538, 893 A.2d 389 (2006).

"A finding of fact is clearly erroneous when [either] there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Seymour* v. *Region One Board of Education*, supra, 274

Conn. 104. Therefore, "[u]nder the clearly erroneous standard of review, a finding of fact must stand if, on the basis of the evidence before the court and the reasonable inferences to be drawn from that evidence, a trier of fact reasonably could have found as it did." (Internal quotation marks omitted.) *McBurney* v. *Paquin*, 302 Conn. 359, 368, 28 A.3d 272 (2011). To establish standing "[t]he burden rests with the party who seeks the exercise of jurisdiction in his favor . . . clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute." (Internal quotation marks omitted.) *Goodyear* v. *Discala*, 269 Conn. 507, 511, 849 A.2d 791 (2004). To prove standing in a foreclosure action, the plaintiff is obligated to prove that it is the holder of the note and thus possesses the legal right to enforce the note. See *Equity One, Inc.* v. *Shivers*, 310 Conn. 119, 126–27, 74 A.3d 1225 (2013) ("Standing to enforce [a] promissory note is [established] by the provisions of the Uniform Commercial Code . . . . Under [the Uniform Commercial Code], only a holder of an instrument or someone who has the rights of a holder is entitled to enforce the instrument." [Citations omitted; internal quotation marks omitted.]).

The defendant contends that this case is similar to the situation in *U.S. Bank* v. *Coley*, a Superior Court case, in which a "pooling and servicing" agreement presented in an attempt to establish standing, was deemed insufficient by the trial court. *U.S. Bank* v. *Coley*, Superior Court, judicial district of Fairfield, Docket No. CV-07-6001426, at *3 (June 10, 2011). However, in that case the plaintiff was not a party to the agreement. Id. Here, both the original plaintiff, Chevy Chase, and the successor plaintiff, Capital One, were parties to the merger documented in the certificate in evidence. Furthermore, and even more significant, the acquisition of Chevy Chase, according to the certificate of merger issued by the Comptroller of the Currency, which the court credited, was not yet effective at the time the foreclosure was commenced in Chevy Chase's name. The defendant also relies on the July 15, 2009 letter which indicated that Capital One had "acquired Chevy Chase Bank earlier this year." However, the trial court was, as the trier of fact, permitted to weigh the evidence, and was entitled to rely on the certificate of merger as the more credible evidence.

The certificate of merger indicated that Chevy Chase was merging with Capital One, but that the merger was not effective until July 30, 2009, well after the commencement of this action by Chevy Chase on July 13, 2009. Therefore, we conclude that the defendant has failed in his burden to show that the court was clearly erroneous in its factual finding that Chevy Chase had proved that it was the holder of the note when the foreclosure action was commenced on July 13, 2009, and thus it was the proper party to commence the

foreclosure action. We further conclude that as the note holder at the time of the commencement of this action, Chevy Chase had the specific personal and legal interest to constitute standing to bring this action, and that the court properly denied the defendant's motion to dismiss.

## II

Next, we address Judge Hartmere's denial of the defendant's motion to open the default. The defendant claims that the court improperly denied the defendant's motion to open the default for failure to plead. We disagree.

The court's order on the motion to open the default simply stated that the motion was denied. The motion to open is governed by Practice Book § 17-42, because the default was entered prior to a final judgment.[6] Section 17-42 provides in relevant part that "[a] motion to set aside a default where no judgment has been rendered may be granted by the judicial authority for good cause shown . . . ." The defendant argues that there was good cause to set aside the default. Specifically, the defendant contends that there was no prejudice to the plaintiff, because the defendant's counsel filed the motion to open default less than two months after the complaint was amended for the second time. In *Higgins* v. *Karp*, 243 Conn. 495, 509, 706 A.2d 1 (1998), our Supreme Court adopted prejudice against the adversary as a widely accepted factor in determining whether to set aside a default. However, we conclude that the court did not abuse its discretion in denying the defendant's motion to open the default.

It is well established that "[the] determination of whether to set aside [a] default is within the discretion of the trial court . . . [and] such a determination will not be disturbed unless that discretion has been abused or where injustice will result. In the exercise of its discretion, the trial court may consider not only the presence of mistake, accident, inadvertence, misfortune or other reasonable cause . . . factors such as [t]he seriousness of the default, its duration, the reasons for it and the degree of contumacy involved . . . but also, the totality of the circumstances, including whether the delay has caused prejudice to the nondefaulting party." (Citations omitted; internal quotation marks omitted.) Id., 508.

The defendant's motion to open the default did not allege any facts demonstrating that good cause existed to set aside the default. Additionally, the motion to open was filed almost one year after the return date and nearly seven months after the motion for default for failure to plead was granted by the clerk. Furthermore, the defendant's counsel did not provide any explanation for the defendant's initial failure to plead in response to the complaint or give a reason as to why the defendant

waited almost seven months to file a motion to open the default. The motion simply stated that the defendant had just retained counsel and that counsel needed an opportunity to consult with the defendant to ascertain whether any defenses or other claims existed that would have required filing an answer, special defenses, and/or other respective pleadings.[7] However, the defendant's counsel then waited five months before filing his motion to dismiss, and almost an additional three years before filing the answer with special defenses. Therefore, we conclude that the court did not abuse its discretion by denying the defendant's motion to open the default for failure to plead.

### III

We next address the court's striking of the defendant's answer with special defenses. The defendant claims that the court improperly struck, and erred in failing to allow him to file, his answer with special defenses. We disagree.

The defendant argues that the plaintiff's amendments to the complaint made substantive changes to the operative complaint sufficient to allow the court to have considered his answer with special defenses. It is true that "[i]f the effect of an amendment of a complaint so made is to substantially change the cause of action originally stated, the defendant is entitled to file new or amended pleadings and present further evidence. Also, if the amendment interjects materially new issues, the adversary is entitled to reasonable opportunity to meet them by pleading and proof." *Mazulis* v. *Zeldner*, 116 Conn. 314, 317, 164 A. 713 (1933). However, the only changes made to the original complaint included the addition of a new defendant based on its acquiring a subsequent interest in the premises, the altering of the legal description of the premises due to a partial release of the mortgage, and the substitution of Capital One for Chevy Chase as the plaintiff due to their merger. All substantive allegations in the complaint remained the same.

The defendant argues that he can demonstrate prejudice if the answer with special defenses is not allowed. However, we note that the first two special defenses filed in the defendant's answer dealt with issues of standing already addressed and decided after the September 1, 2011 evidentiary hearing by Judge Hartmere. Additionally, the third special defense alleged a noncompliance with unspecified conditions precedent under the mortgage and note necessary to accelerate any debt or to commence or maintain this action, but never specified what they were. Not only was there no specificity pleaded as to what conditions had not been met that were necessary for accelerating payment of the note and obtaining a judgment of foreclosure, but it is also worth noting that the third special defense was never characterized as a claim regarding a lack of

subject matter jurisdiction. This claim was not raised in the defendant's motion to dismiss, nor was the trial court ever alerted to the assertion that the defendant makes for the first time on appeal, that this claim is jurisdictional in nature. Thus, the defendant's substantive rights were not affected by the amendments, and he has not demonstrated prejudice. See *Willamette Management Associates, Inc.* v. *Palczynski*, 134 Conn. App. 58, 68, 38 A.3d 1212 (2012).

Furthermore, the defendant's answer with special defenses was not filed until April 19, 2013, almost four years after this action was commenced by the original plaintiff. Nonetheless, the defendant argues that because the plaintiff amended its complaint, he was authorized to file his answer with special defenses pursuant to Practice Book § 10-61, and, therefore, the court abused its discretion in striking his answer with special defenses. Practice Book § 10-61 provides in relevant part that "[w]hen any pleading is amended the adverse party may plead thereto . . . ." However, the defendant's argument fails because Practice Book § 10-61 continues to qualify the adverse party's ability to plead "within the time provided by Section 10-8 . . . ."[8] Practice Book § 10-8 provides that in actions to foreclose a mortgage on real estate, the pleadings shall advance within fifteen days of each other. Therefore, even if the defendant would have been entitled to plead in response to the plaintiff's amended complaints, pursuant to Practice Book § 10-8 he would only have been able to plead within fifteen days of the filing of the plaintiff's amendments. Given the fact that the plaintiff amended its complaint on January 22, 2010, and April 21, 2010, and its motion to substitute Capital One as the plaintiff was granted on November 21, 2011, the defendant's answer with special defenses filed on April 19, 2013, was filed long after the fifteen days allowed by Practice Book §§ 10-61 and 10-8, and therefore, was untimely. See *Richards* v. *Trudeau*, 54 Conn. App. 859, 863, 738 A.2d 215 (1999) (holding that court did not abuse discretion in refusing to give effect to defendants' answer when filed almost one year after default was entered against them).

On the basis of our review of the record, we conclude that the court did not abuse its discretion by striking the defendant's answer with special defenses as untimely filed.

The judgment is affirmed and the case is remanded with direction to set a new sale date.

In this opinion the other judges concurred.

[1] Webster Bank, N.A., was cited in as a party defendant in this action, but is not involved in this appeal. We therefore refer in this opinion to Avidon as the defendant.

[2] The original plaintiff, Chevy Chase Bank, F.S.B. (Chevy Chase), commenced this action by service occurring July 13, 2009. Thereafter, on November 4, 2011, Chevy Chase filed a motion to substitute Capital One as the plaintiff in the action, which was granted on November 21, 2011.

[3] The mortgage on the property was executed by the defendant and delivered to Mortgage Electronic Registration Systems, Inc., as nominee for Chevy Chase. The mortgage was then assigned to Chevy Chase by virtue of an assignment of mortgage dated October 7, 2009, and recorded on November 23, 2009.

[4] The record does not indicate that the defendant's counsel ever claimed his motion for extension of time to plead, and it was never granted by the court.

[5] Wikipedia is an encyclopedia website, which is accessible to the public free of charge, and updated collaboratively by the site's visitors.

[6] "Practice Book § 17–32, entitled Where Defendant is in Default for Failure to Plead, provides, in relevant part: (b) If a party who has been defaulted under this section files an answer before a judgment after default has been rendered by the judicial authority, the clerk shall set aside the default. *If a claim for a hearing in damages or a motion for judgment has been filed the default may be set aside only by the judicial authority*." (Emphasis in original; internal quotation marks omitted.) *Snowdon* v. *Grillo*, 114 Conn. App. 131, 137, 968 A.2d 984 (2009). Due to the fact that a motion for judgment of strict foreclosure had already been filed by the plaintiff on May 26, 2010, the latter provision of § 17-32 would be applicable in this case. Therefore, only the judicial authority would have been able to set aside the default.

[7] It is important to note that although we allow pro se litigants some latitude, the right of self-representation, however, "provides no attendant license not to comply with relevant rules of procedural and substantive law." *Galland* v. *Bronson*, 204 Conn. 330, 334–35, 527 A.2d 1192 (1987).

[8] Practice Book § 10-61 also provides in relevant part that "if the adverse party has already pleaded, [the adverse party may] alter the pleading, if desired, within ten days after such amendment or such other time as the rules of practice, or the judicial authority, may prescribe . . . ." However, the defendant had not already pleaded, so this alternative provision does not apply here.